**PERKINS v. BENGUET CONSOL. MINING CO. et al.**
(Two Cases).

Common Pleas Court, Clermont County.

Nos. 22185 and 22191.

Cors, Scherer & Hair, Cincinnati, by Gordon H. Scherer, Charles F. Hartsock, Cincinnati, for plaintiff.

Judge John W. Hausserman, New Richmond, pro se, Lucien H. Mercier, Washington, D. C., Ely, White & Davidson, Batavia, by Judge C. G. White and Nichols, Speidel & Nichols, all of Batavia, represented by Harold D. Nichols, Batavia, for defendants.

### OPINION

By BRITTON, Justice.

These causes came into this court on motion following the filing of two Petitions in two cases by the same Plaintiff, and against the same Defendant, or Defendants.

Identical motions in the two cases have been filed, and the motions read as follows: "* * * Comes now the Defendant, Benguet Consolidated Mining Company, and appearing specially for the purpose of this motion only, and disclaiming any intention of entering other than a special appearance for the purposes of this motion, hereby moves the Court for an order quashing and setting aside the attempted service of

alias summons heretofore issued against this Defendant, and for an order quashing and setting aside the return of said attempted service."

In these cases, certain relief is asked by the Plaintiff as will be noted from the pleadings so filed against the Defendant, Benguet Consolidated Mining Company.

And now certain stipulations have been filed in each of these causes and one reading of the same seems to be identical with the other, and they, therefore, appear as follows:

"* * * It is stipulated and agreed by and between counsel for the plaintiff, Idonah Slade Perkins, and counsel for the defendant, Benguet Consolidated Mining Company, as follows:

"1. That this stipulation shall in no wise constitute an Entry of Appearance in this cause by the defendant, Benguet Consolidated Mining Company, and that this stipulation is entered into only and specially for the purposes of the Motion of the defendant to Quash Service of Summons in this cause.

"2. That the testimony, exhibits, briefs and arguments of counsel, introduced in the Court of Common Pleas of Hamilton County, Ohio, in Case No. A-103-968, being styled, 'Idonah Slade Perkins, plaintiff, v First National Bank of Cincinnati, et al., defendants, [79 N. E. 2d 159]' by both plaintiff and this defendant, in support of and opposing the Motion to Quash Service of Summons filed by this defendant in said cause, and the record of said cause to the date of this stipulation, are hereby introduced in this cause so as to constitute, together with such additional evidence, exhibits, briefs and arguments, as either party may offer, the entire record, evidence, exhibits, briefs and arguments, in support of and in opposition to the Motion to Quash Service of Summons filed by the defendant, Benguet Consolidated Mining Company, in this cause.

"Cors, Scherer & Hair
by Gordon H. Scherer
Attorneys for Plaintiff
Charles G. White
Attorney for Defendant,
Benguet Consolidated Mining Company"

Now, the Benguet Consolidated Mining Company apparently was, for all intents and purposes, organized under the laws of the Philippine Islands as that which may be called a corporation and indeed it was a corporation insofar as the laws then prevailing were concerned, and so far as that connected here.

It appearing that it was organized and thereafter, for many years, until, and including the present time, existed as a cor-

poration insofar as the laws of the Philippine Islands were concerned.

Under Article 122 of the Code of Commerce of Spain, there are some several manners in which an association of persons may be joined together for the purpose of operating a business, or businesses, which appears as follows:

"1st: A regular, general, copartnership in which all of the parties under a collective and commercial name bind themselves to participate in the proportion they may establish in some right and obligation.

"2d: The limited copartnership to which one or more persons contribute a specific amount of capital to a common fund to become liable for the business transactions of the firm executed exclusively by others under a collective name.

"3d: The corporation in which the members form a common fund by means of specific parts, or portions, represented by shares, or in any other unquestionable manner, leaving its management to removable managers, or administrators, who represent the company under an appropriate denomination according to the purpose, or undertaking, for which funds are to be employed."

The latter of the above Philippine laws, then existent, seems to be that particular portion under which this Defendant was originally organized, or came into being, in its originality, and under which it has existed since, up to, and including this time.

The general evidence in this case further discloses that during the year 1903 and following the close of the war with Spain, the Defendant, organized itself under the Code of Commerce to which I have just now referred.

It may be said that it was organized for the purpose, or purposes, of mining gold and/or its kindred products. This organization has been operating, apparently, from its very inception, to the time and the date of this hearing, as and for gold mining and kindred products in the home state of its creation.

It must, however, be noted from all of the evidence and the exhibits in this case that in 1906 there came to the Phillipine Islands a Corporation Code which, in substance, changed the then existing partnership and corporation laws with reference to their various original existences. However, when this 1906 change, or amendment, came into being, it was not for the purpose of changing any of the theretofore existing corporate, or partnership laws, or those created thereunder, at least insofar as their original inception, or organization, may have been there connected. It was, apparently, a law designated for the benefit of future business organizations which may, or might, come into the Islands for the purpose of the betterment

of the Islands, as well as for the future good being of its business organizations.

Now, if any organization whose inception became a being prior to the passage of the 1906 law, desired to follow or become a part or be reorganized, or re-created, so to speak, under the new 1906 law, it, or they, might, of their own volition, freely and voluntarily be, or become, reorganized thereunder. Otherwise, it, or they, would not, of necessity, fall under the law of 1906.

It seems to follow, beyond peradventure of doubt in this case, that this Defendant did not see fit to reorganize, to reinvest itself in the law insofar as it pertained to it, or to re-create its being in and/or under the law of 1906. Therefore, it would only be reasonable to conclude that for circumstances of its own, it did not so desire to follow the new law then and there created. And, from the evidence, it further appears that this Defendant did not even make an attempt to re-create, reorganize, or otherwise, itself, under the 1906 law so that now a Court in hearing, can only say, by these words, that this Defendant is yet existent under its original and parentage organization as of 1903 without complying, and legally so, with the laws of 1906, and is yet a corporation under the 1903 organization.

It further appears that changes were made in the latter law with reference to partnerships, copartnerships, and corporations, but due to the fact that Defendant did not, in any wise, comply with this new law, then the Court is not required to go into any of the provisions of the new law, and the Court does not feel in this cause, or in these causes, that there is any connection; that is to say, a binding connection upon this Defendant with the law of 1906.

It is further noted from the evidence that the main office or the business office, of this Defendant was located in the city of Manila, in the Philippine Islands, and that it has operated its office in this city, within the Islands, since it originally came into existence and being.

Now, the Plaintiff here, in these cases, makes certain claims. Those claims are not at issue at this time, the sole question here being whether or not the summons, heretofore served in these causes, was, or was not, properly and legally served under the existent laws at the time of its, or their, service by the Sheriff.

The service of summons here shows this:

"* * * That on April 4th, 1947, the Sheriff of Clermont County, Ohio, received a summons to be served and that on April 4th, 1947, he served John W. Haussermann, etc., by personally

handing to him a true and certified copy thereof with all endorsements thereon.

(Signed)  Clyde Dericks,
Sheriff of Clermont County, Ohio."

"It is further shown by the record that on May 2d, 1947, Sheriff of Clermont County, received, at 11:00 o'clock A. M., he served John W. Haussermann by serving a copy of the summons upon him personally and also Benguet Consolidated Mining Company by serving a copy of the summons, personally, on John W. Haussermann, President, General Manager, Controlling Member, and duly authorized Representative and Agent in the United States and state of Ohio by personally handing to him a certified copy thereof, with all endorsements thereon.

(Signed)  Clyde Dericks,
Sheriff of Clermont County, Ohio."

The above, as referred to, being in Case No. 22185 of the Common Pleas Court of Clermont County, Ohio, and it will be further noted from the record in Case No. 22191 of the Common Pleas Court of Clermont County, Ohio, that—

"The Sheriff of Clermont County, Ohio, received a summons April 8th, 1947, at 9:30 o'clock A. M., and on April 8th, 1947, he served C. L. Meeker, Cashier of the First National Bank of New Richmond, Ohio, John W. Haussermann, President of Benguet Consolidated Mining Company, and John W. Haussermann, Parent Resident and General Manager, by handing to each of them a true and certified copy thereof, with all endorsements thereon.

(Signed)  Clyde Dericks,
Sheriff of Clermont County, Ohio."

"And also an alias summons which the Sheriff received on May 2d, 1947, at 11:00 o'clock A. M., and on May 2d, 1947, served John W. Haussermann, by serving a copy of the summons upon him, personally, and also Benguet Consolidated Mining Company by serving a copy of the summons on John W. Haussermann, personally, President, General Manager, Controlling Member, and duly authorized Representative and Agent in the United States and state of Ohio by personally handing to him a true and certified copy thereof, with all endorsements thereon.

(Signed)  Clyde Dericks,
Sheriff of Clermont County, Ohio."

Now, it is upon these summons and returns thereof that the issues here have been raised.

Stipulations have been filed in these causes which appear and are of record, and the Court now has heard both controversies which involve the same circumstances in one general hearing.

It will suffice to record here one of the stipulations which is identical with the other covering each of the causes heard by this Court as follows:

"* * * It is stipulated and agreed by and between counsel for the Plaintiff, Idonah Slade Perkins, and counsel for the Defendant, Benguet Consolidated Mining Company, as follows:

"1st: That this stipulation shall, in no wise, constitute an Entry of Appearance in this cause by the Defendant, Benguet Consolidated Mining Company, and that this stipulation is entered into only and specially for the purposes of the motion of the Defendant to quash service of summons in this cause.

"2d: That the testimony, exhibits. Briefs, and arguments of counsel introduced in the Court of Common Pleas of Hamilton County, Ohio, in Case No. A-103968 being styled 'Idonah Slade Perkins, Plaintiff, v. First National Bank of Cincinnati, et al., Defendants' by both Plaintiff and this Defendant, in support of, and opposing the motion to quash service of summons filed by this Defendant in said cause and the record of said cause, to the date of this stipulation, are hereby introduced in this cause so as to constitute, together with such additional evidence, exhibits, Briefs, and arguments as either party may offer, the entire record, evidence, exhibits, Briefs, and arguments in support of and in opposition to the motion to quash service of summons filed by the Defendant, Benguet Consolidated Mining Company, in this cause. Each of these stipulations have been duly authenticated by the signatures of counsel representing the respective parties in litigation."

Very able counsel and well-worded Briefs have been presented to the Court as and from another hearing in Hamilton County, Ohio. That case involved, in the main, the same issues as the causes now in hearing in this Court.

However, in addition to all of the testimony and exhibits used in Hamilton County and in the Common Pleas Court of that county, there has been in this court voluminous, additional testimony in the nature of expert statements as and for a comparison of the laws of the state of Ohio, and those of the Philippine Islands, in a general endeavor to make record of certain facts and circumstances which, of necessity, involve themselves in and with the laws of the state of Ohio, and the laws of the Commonwealth of the Phillipine Islands. It is interesting, indeed, for the Court to be privileged to hear

and to be advised of this expert knowledge and comparison of the two similar, if not identical, laws of the state of Ohio and the Commonwealth of the Philippine Islands. This testimony, however, is in addition, as stated before, to that general evidence presented before the Court of Common Pleas in Hamilton County, Ohio.

This, of itself, is not a criterion as to the correctness of either of the laws or as to the original organization, parentage, and inception of the Defendant, but is, indeed, of interest and of great knowledge to a Court deciding the issues in and on the motions so presented here. A Court, in deciding questions of law, must be advised and in order to be advised of the necessary and pertinent laws, must have had presented to it that evidence thereto, and that evidence in this case has been quite ably presented for the consideration of the Court and which evidence is and has been added to the record in this court which was not in the record of the Hamilton County case for the consideration of the Court there.

This cause has been presented in an entirely different light than it was in Hamilton County, and therefore this Court has had the benefit of the additional circumstances which were not presented in Hamilton County.

A volume of statements has been entered in the record by counsel which explain the foundations, in substance, of the general issues, and that record has been completed for future and further reference.

Volumes of law have been brought to the attention of the Court, a part of which the Court desires to mention, substantially, and in this Opinion at this time.

The Defendant claims that it is not doing business in the state of Ohio, and, on the other hand, it is claimed by the Plaintiff that the Defendant is doing business within the State of Ohio.

Now, taking up the latter—

Is the Defendant doing business within the state of Ohio in the strictest sense of the word "doing business," as may have been heretofore mentioned, and passed upon by the Courts of this country?

Now, in passing, as argued by counsel, it has been said that in the state of California in the case of Idonah Slade Perkins as Plaintiff, and Benguet Consolidated Mining Company, a corporation, as Defendant, the plaintiff claimed, as set out in proper exhibits, this fact:

In the Superior Court of the State of California in and for the city and county of San Francisco, this same Plaintiff, in her complaint, made this statement:

"At all of the times herein-mentioned, the above-named Defendant was, and ever since has been, and still is, a corporation organized, existing, and doing business under and by virtue of the laws of the Philippine Islands, and having its principal place of business in the city of Manila, Philippine Islands."

This possibly has only been introduced and made an exhibit by photostat in order to show that the Plaintiff here, who was the same Plaintiff in California, said in California, in substance, that this same Defendant was a corporation in that case, and now the same Plaintiff here has, by extraordinarily well-worded phraseology, said in her pleadings that the same Defendant is an alien business association known as a Sociedad Anonima organized and existing under the laws of the Philippine Islands, Manila, Philippine Islands

Now, that, of itself, means little in these causes other than the fact that this Defendant was then a corporation, and now it is something, by Plaintiff's own deductions, other than anything we, in Ohio, have ever heard of.

That is to say, according to Plaintiff's counsel's argument, a quantity upon which it is desirous of serving a summons within the state of Ohio provincing jurisdiction. Now, can it be said that because a subterfuge of things have been made that one can create a body upon which a summons may be legally served as designated and required by the General Code of the state of Ohio in order that a foreign Defendant, and an entirely foreign Plaintiff may ask to right her, or his, wrongs within the state of Ohio as against an entirely foreign corporation, and a corporation of the Philippine Islands?

Wording in the caption of any cause does not legally make jurisdictional supervision as giving a jurisdiction where or in what it is not legally authorized by the laws of that jurisdiction.

The record indicates in this case that this Plaintiff is a resident, so-called, of another state. That she is now a non-resident of the state of Ohio; that she has never been a resident of the state of Ohio.

There are a long line of decisions to the effect that the Ohio courts generally refuse jurisdictional, so-called, qualifications to enforce claims of entirely foreign personages bearing no direct inferences upon and with the laws of the state of Ohio authorizing jurisdiction. This action, in its original inception and provinces, was within the Commonwealth of the Philippine Islands.

Now, in the service, or so-called service, of the summonses in these cases, the questions involved are these, as stated before—

Is the Defendant here doing business within the state of Ohio?

Now, decisions have been cited to the Court and the Court has had the opportunity of hearing the argument of eminent counsel, very ably and theretofore prepared, and now to have had the opportunity of going over these citations given here it appears, in substance, this:

"Whether the Defendant is doing business within the state of Ohio to such an extent as will render it amenable, under our laws, to the service of summons under the Ohio Code.

"In 284 F. 550, appears the case of Consolidated Iron & Steel Company v. Maumee Iron & Steel Company in the Circuit Court of Appeals, 8th Circuit, October 26, 1922, in which a question very similar, if not identical, to these cases, appears, and in that case it was held by the Court that summons could not be properly made on a corporation which did not qualify to do business in this state. It had no office in this state. No managing agent had been appointed, pursuant to the Statute, and the corporation had no property in the state, although its President resided there, and as a matter of fact, carried on some correspondence and occasionally sent remittances to the corporation in its home state. Service of summons was made on the President under the Ohio Code."

Now, it may be said that property is in effect, which, of itself, is not a possession such as would conceive it to be "a doing business" organized within the state.

This case goes further. The Consolidated Iron & Steel Company was a mining corporation in New Mexico, stockholders living there, its mining business there, and Frank Wesbara lived in Toledo, and was interested in the corporation, made various advances from time to time for stock, and was made President and continued as such until 1917. He carried on correspondence as an officer in the company's name. Meetings of the Board of Directors were held there. He died. His brother was elected President and continued as President to advance funds, sent them to New Mexico for certain work. The company, in its original inception, never applied for rights to do business in Ohio, under our Code, had no property there excepting possibly some office equipment; no Managing Agent, under our Statute.

Now, in that case it was held by the Court that the voluntarily solicited transmission of funds from one state to a foreign corporation in another state was insufficient proof that the foreign corporation was doing business in the state from which the funds were derived. It is true an office had once been opened in the state of Ohio, the name of the com-

pany placed thereon, and a bank account was maintained within the state, and correspondence from the state apparently in that case was insufficient to establish a corporation doing business within the state of Ohio.

Now, in this case we have innumerable correspondence as representative of New Richmond, Clermont County, Ohio, as written there. There is evidence of incoming correspondence to the Defendant in the county of Clermont and state of Ohio, but does that, under this Opinion, indicate the company is doing business within the state of Ohio, generally, or is qualified to do business within the state of Ohio?

It must, however, be remembered that the original right of action in this cause was born, conceived, and attributed within the limits of the jurisdiction of the courts of the Philippine Islands, and therefore, having been incepted within one jurisdiction, our courts in the United States seemingly hold that to have been originated within another jurisdiction, a jurisdictional infraction cannot be made to prevail upon another Court without the realm of its original and proper legal litigable basis.

Now, to refer back to the Hamilton County case, considerable evidence was there introduced and many exhibits presented; undoubtedly much argument to the Court, all of which is made a part of the record in this county. And such record as may have been presented in another court has been generally, by stipulations, agreed to and given to this Court for its consideration, and the Court has, in fairness to all those in litigation here, considered and weighed all of that evidence and those exhibits as have been presented.

The evidence in this court is a presentation of circumstances legally involved and involving this action which is for, and should be for, a final determination insofar as this Court may be in concern.

Now, going farther into the question of the service of summons—

Does the fact that the President of the defendant organization who has a residence within this county of Clermont give the Plaintiff the right, under the Ohio Code, to serve a summons regardless of the type of summons upon the President, so to speak, so as to become binding on the organization in a foreign country, when such organization has never applied for nor has it been granted a license or authority to operate within the state of Ohio?

It is clearly and conclusively an elementary principle of law that one has a right to choose a domicile, but that domicile does not, under the prevalence of law in Ohio, constitute him,

or it, doing business therein even though he be President of some corporation at his home, at his office, at or near that domicile, even though, under the case just here quoted, he is carrying on, to some extent, in an advisory capacity, some intermediate business of the organization of which he is President. That is indeed a large measure for any Court to assume, but that Court which assumes that measure must be backed up, generally, by the laws prevailing in that realm over which he has, or assumes, by Statute, jurisdiction.

This cause, having been originally instituted in this county, must be governed by the laws and regulations of this state, even though the inception of whatever right of action the Plaintiff may have had was incepted within the Commonwealth of the Philippine Islands. This Plaintiff comes here with an idea of prevalence in her claim and in an attempt to invoke jurisdiction upon this court for summons upon a corporation not only foreign with the states of the United States of America, but foreign to the extent that its original inception and being was in the Philippine Islands during the year of 1903.

Numerous and various citations have been presented and in American Jurisprudence, Volume 23 at Page 349, Section 367, it will be noted this:

In view of most Courts, which have considered the question, the purchase by a foreign corporation, within the state, of machinery, supplies, or stock in trade, for use in its business in another state and the acts necessarily incident thereto do not constitute "doing business" within the state requiring the corporation to comply with the local statutory prerequisites thereto, or making it amenable to the jurisdiction and process of local courts.

Now, visits to the state by officials of the corporation to make such purchases, even if occurring at regular intervals, will not warrant the inference that the corporation is present within the jurisdiction of the state.

A Defendant which had been served with process in New York was an Ohio corporation supplying a department store in Toledo, and another department store several miles away from Toledo. The company never made any sales in New York, but bought a large quantity of merchandise in New York. In fact, several million dollars worth of goods per year for use in its department stores in Ohio. From time to time, during the year, it sent a large staff of its buyers to New York and also its officers. The officers and buyers had stenographers in New York and some of the orders were confirmed in New York by officers of the company who happened to be there, but in that instance it held this:

The law is clear that purchases in New York by a foreign corporation of a large part of the merchandise to be sold at its place of business outside the state, even if made upon visits occurring at regular intervals, does not warrant a holding that the corporation was present within the jurisdiction of the state.

Again, in 19 Ohio N. P., N. S., at page 492, in the case of Dickey v. Dayton Globe Iron Works Company, the Court held this: "The mere transaction of business by a corporation through one of its officers in another state does not constitute 'doing business' in that state within the meaning of the Statute relating to service of summons and service had upon such official, under such conditions, is defective and renders invalid proceedings based on such service."

And, so, in **Hurd v. John B. Ransom & Co., 13 Oh Ap at page 135,** it has been stated that where "the President of such foreign corporation is in Ohio for the sole purpose of attending a national convention, his presence is merely temporary and incidental, and he is not 'doing business' within the meaning of the law to afford a sufficient basis for the service of his summons."

And now that case goes further, and the Court says this:

"That service upon such foreign corporation, to be good, must be made upon the Managing Agent."

Now, that goes back to §11290 GC and when the Sheriff's return shows service only upon the President, and it not appearing what the duties of the President are nor that he is Managing Agent, it is incumbent upon the Plaintiff to prove that such President is the Managing Agent.

And, now, in **39 Oh Ap at page 38,** 177 N. E. 49, in the case of **Warren Tool & Forge Company v. Marcus,** it will be noted this: "Presence in the state of New York cannot be attributed to an Ohio corporation from the facts that the corporation has a sales agency in that state, that the corporation's printed stationery refers to the sales agency office as the New York office of the corporation, and that the sales agent causes the name of the corporation to be published in the city and telephone directories and posted in the lobby of the building in which the agent has an office."

All of the above citations seem, without question of doubt, to pertain entirely to the issues in these causes, and for the Court to ignore such findings would be folly, indeed. The Court must, of necessity, follow, to some extent, at least, the findings so made by other Courts, not only in Ohio, but in other states of the Union.

Now, other findings have been made and in the case of

Dunn v. Cedar Rapids Engineering Company of Delaware, etc., 9 Cir., 152 F. 2d 733, this finding was made:

"Dunn brought suit in the California State Superior Court against two corporations, residents of another state, upon a cause of action wholly arising in the other states. The corporations were doing business in California and had designated an agent upon whom service of summons could be served. Upon motion of the corporations the cause was removed to the United States District Court upon the grounds of diversity of citizenship. Thereupon the corporations defendants appeared specially and presented a motion to set aside, vacate and quash the service, and the motion was granted."

In its decision, the Court reported the following cases:

It is said in Missouri Pacific Railway Company v. Clarendon Boat Oar Company, 257 U. S. 533, 535, 42 S. Ct. 210, 211, 66 L. Ed. 354, this:

"Provisions for making foreign corporations subject to service in the state is a matter of legislative discretion, and a failure to provide for such service is not a denial of due process. Still less is it incumbent upon a state in furnishing such process to make the jurisdiction over the foreign corporation wide enough to include the adjudication of transitory actions not arising in the state. Indeed, so clear is this that in dealing with statutes providing for service upon foreign corporations doing business in the state upon agents whose designation as such is especially required, this court has indicated a leaning toward a construction, where possible, that would exclude from their operation causes of action not arising in the business done by them in the state.

Now, it will be observed that speaking of originalities, these causes accrued, and were incepted, within the Philippine Islands and now it is sought to enforce whatever cause of action this Plaintiff may have had in the Philippines within the United States, and within the state of Ohio, and upon a corporation not authorized and not doing business within the state of Ohio.

It is also said in Rogers v. Guaranty Trust Company of New York, 288 U. S. 123, 53 S. Ct. 295, 297, 77 L. Ed. 652, that:

"It [is a] settled doctrine that a court—state or federal—sitting in one state will, as a general rule, decline to interfere with, or control by injunction or otherwise, the management of the internal affairs of a corporation organized under the laws of another state but will leave controversies as to such matters to the courts of the state of the domicile" of the corporation.

That is to say, courts of the state of the original domicile

of that individual firm or corporation from which relief is or may be asked at the hands of the Court.

Now, this is of interest to the Court, as reported in the Court of Claims, Report 39, 1903-1904 of the Court of Claims of the United States of America, in the case of Philippine Sugar Estates Development Company, Ltd. v. United States, 39 Ct. Cl. 225, in which it is said that: "The domicile of a corporation is that fixed by the status under which it is created. The establishment of a branch in a place, other than the domicile, does not affect the domicile."

Now, in this case, and the issues joined here, it cannot be said amiss but that this Defendant had a right to choose, and in that respect it may be said that this Defendant chose, for its corporate existence, the Commonwealth of the Philippine Islands, due, of course, to the fact that it intended to mine gold and such kindred products as may be connected therewith.

Now, shall a Court say that this company was operating within the state of Ohio, when, in truth and in fact, its original inception was entirely within a Commonwealth other than that of the states of the United States of America.

It has always been an inherent right of free peoples to choose their, or its, respective vocation, place of business domicile, and investments then or thereafter accumulated for purposes of general, or special, business. And this Defendant, in so far as the record discloses, indicates in 1903 its place of business within the Philippine Islands with its head office and principal place of business in the city of Manila in the Islands, and has continued therein and thereat, since its original inception, without hindrance from any foreign legal or lawful states, or organizations, until and when the Japanese in World War No. II invaded the Islands and that invasion then and there caused this corporation to become inoperative by reason of the emergency. And now following that great war the corporation has, of itself, of its stockholder, of its officials, and those there connected, been in operation of the mines of its originality and domicile within the Commonwealth of the Philippine Islands and within a foreign country in so far as the state of Ohio may have, or now be concerned.

Since Defendant, Benguet Consolidated Mining Company, was originally created, under the law here referred to, it has existed under that corporation law and yet exists under the same, it must be treated as it is now existent. The evidence here, and all of the evidence, together with all of the exhibits, preponderates in favor of its being a corporation and entitled to be treated as such. Now, to serve summons or process upon

a corporation, certain things are first necessary, under our laws, and our laws must be definitely considered, as well as strictly construed, and to consider, as well as strictly construe the Court is bound to follow that long line of decisions by eminent courts, not only in Ohio, but elsewhere and following those decisions would be to say that this corporation was not doing business in or within the state of Ohio in such a sense or entirety as to legally authorize its service in this state with process.

Although some transactions were carried on within the state of Ohio, under the cases cited and all of the evidence presented, the Court is of the opinion that this business of whatever nature it may have been and whatever nature it has been shown to be, is insufficient to place this Defendant in the category of doing business to a sufficient extent for legal service of summons upon it under the laws of the state of Ohio, and the motion, therefore, to quash and set aside the service of summons in this cause is, in the opinion of the Court, well taken and, therefore, such process should be and is set aside.

And during the hearing in these matters, Plaintiff's counsel have presented the question as to whether or not the Defendant, Benguet Consolidated Mining Company, has not entered appearance by the filing of the motions here referred to.

Briefs have been presented on this question and it is found by these proceedings that the motions were in due form and the usual and ordinary motions generally filed for such purposes. And the Court finds, and is of the opinion, that this question is not based upon sufficient law to warrant the Court in finding that this Defendant has, by its original motions, entered an appearance here.

Entries may be prepared in these causes, saving all exceptions necessary to protect the right of those in litigation here.