**LSI INDUSTRIES INC.,**
Plaintiff–Appellant,

v.

**HUBBELL LIGHTING, INC.,**
Defendant–Appellee.

No. 00–1052.

United States Court of Appeals,
Federal Circuit.

DECIDED: Nov. 29, 2000

J. Robert Chambers, Wood, Herron, & Evans, L.L.P., of Cincinnati, Ohio, argued for plaintiff-appellant. With him on the brief was Theodore R. Remaklus.

Marks S. Bicks, Roylance, Abrams, Berdo & Goodman, L.L.P., of Washington, DC, argued for defendant-appellee. With him on the brief was Alfred N. Goodman.

Before GAJARSA, LINN, and DYK, Circuit Judges.

GAJARSA, Circuit Judge.

## DECISION

LSI Industries, Inc. ("LSI") appeals the September 17, 1999 final judgment of the United States District Court for the Southern District of Ohio dismissing its complaint against Hubbell Lighting, Inc. ("Hubbell") pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction. *LSI Industries, Inc. v. Hubbell Lighting, Inc.,* 64 F.Supp.2d 705 (S.D.Ohio 1999). We reverse and remand.

## BACKGROUND

LSI manufactures and sells lighting products, including its Scottsdale canopy luminaire. Hubbell sells a competing product that LSI contends infringes, *inter alia,* one of its design patents and its trademark rights. Hubbell is a Connecticut corporation that maintains its principal place of business in Virginia. It employs multiple distributors in Ohio and nets several millions of dollars per year from sales in Ohio. Hubbell, however, has not sold any of its allegedly infringing products in Ohio.

LSI filed a complaint in the United States District Court for the Southern District of Ohio on May 24, 1999 against Hubbell. Five weeks later, LSI filed a motion for a temporary restraining order and a preliminary injunction to prevent Hubbell from selling its allegedly infringing product. In response, Hubbell moved to dismiss the case for lack of personal jurisdiction and improper venue, or, in the alternative, for a change of venue. On July 8, 1999, the district court conducted a preliminary hearing. It determined a reasonable probability existed that LSI would establish that the district court could exercise personal jurisdiction over Hubbell. The court, however, denied LSI's motion for a temporary restraining order. Subsequently, Hubbell renewed its motion to dismiss for lack of personal jurisdiction, or, alternatively, for a change of venue.

On rehearing, the district court determined that the Ohio long-arm statute, Ohio Revised Code ("O.R.C.") section 2307.382, fails to reach the limits of the Due Process Clause of the United States Constitution. Accordingly, the district court stated that satisfaction of both the Due Process Clause and the Ohio long-arm statute was required for it to exercise personal jurisdiction over Hubbell. Based on Hubbell's significant contacts with the state of Ohio, the court concluded that it could properly exercise general jurisdiction over Hubbell pursuant to the Due Process Clause. The court, however, citing *Beverly Hills Fan Co. v. Royal Sovereign Corp.,* 21 F.3d 1558, 30 USPQ2d 1001 (Fed.Cir.1994), held that the locus of LSI's injury could not be in Ohio because Hubbell did not sell its allegedly infringing product in Ohio. Pursuant to this determination, the district court stated that Hubbell's sales activity failed to comply with the Ohio long-arm statute, and in particular with O.R.C. sec-

tion 2307.382(A)(4).[1] Therefore, the court concluded it could not exercise personal jurisdiction over Hubbell and consequently, granted Hubbell's motion to dismiss for lack of personal jurisdiction.

## DISCUSSION

### A. Standard of Review

■ Whether a court maintains personal jurisdiction over a party is a question of law that we review *de novo*. *3D Systems, Inc. v. Aarotech Laboratories, Inc.*, 160 F.3d 1373, 1376, 48 USPQ2d 1773, 1775 (Fed.Cir.1998).

### B. Jurisdiction and Choice of Law

The Federal Circuit maintains exclusive jurisdiction over an appeal from a district court when that court's jurisdiction is based at least in part on a claim arising under the patent laws of the United States. 28 U.S.C. §§ 1295(a); 1338(a) (1994 & Supp. IV 1998).

■ When analyzing personal jurisdiction for purposes of compliance with federal due process, Federal Circuit law applies. *3D Sys.*, 160 F.3d at 1377, 48 USPQ2d at 1776. We defer to a state's highest court to interpret whether a defendant is amenable to process in the forum state. *See Hortonville Joint Sch. Dist. No. 1 v. Hortonville Educ. Ass'n*, 426 U.S. 482, 488, 96 S.Ct. 2308, 2312, 49 L.Ed.2d 1 (1976); *see also 3D Sys.*, 160 F.3d at 1377, 48 USPQ2d at 1775–76.

### C. Personal Jurisdiction

A two-prong inquiry governs the determination of whether a court may properly exercise personal jurisdiction over an out-of-state defendant. First, a defendant must be amenable to process in the forum state. Second, the court's exercise of personal jurisdiction over the defendant must comply with the precepts of federal due process as delineated in *International Shoe Co. v. State of Wash., Office of Unemployment Compensation . and Placement*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945) and its progeny.

■ The first prong of the personal jurisdiction inquiry was outlined by the United States Supreme Court in *Omni Capital International, Ltd. v. Rudolf Wolff & Co., Ltd.*, 484 U.S. 97, 104, 108 S.Ct. 404, 409, 98 L.Ed.2d 415 (1987):

> Before a court may exercise personal jurisdiction over a defendant, there must be more than notice to the defendant and a constitutionally sufficient relationship between the defendant and the forum. There must also be a basis for the defendant's amenability to service of summons.... [S]ervice of process in a federal action is covered generally by Rule 4 of the Federal Rules of Civil Procedure....

A defendant is amenable to service of process if it "could be subjected to the jurisdiction of a court of general jurisdiction in the state in which the district is located." Fed.R.Civ.P. 4(k)(1)(A). Satisfaction of this standard may be attained in a variety of ways. For example, this requirement is fulfilled when a defendant's conduct falls within the bounds of one of a forum state's jurisdictional statutes, such as a long-arm statute or a nonresident motorist statute. Alternatively, in Ohio, this prong of the personal jurisdiction inquiry is fulfilled when the requirements outlined by the Ohio Supreme Court in *Perkins v. Benguet Consolidated Mining Co.*, 158 Ohio St. 145, 107 N.E.2d 203 (Ohio 1952), are met.

---

1. Personal jurisdiction is proper under O.R.C. section 2307.382(A)(4) when a cause of action "aris[es] from [defendant's] [c]ausing tortious injury in this state by an act or omission outside this state if [it] regularly does or soli- cits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state...." Ohio Rev.Code Ann. § 2307.382(A)(4) (West 2000).

In *Perkins*, Idonah Slade Perkins ("Perkins") brought two actions in the common pleas court of Ohio against several parties including the Benguet Consolidated Mining Company ("Benguet"), a foreign corporation organized under the laws of the Philippine Islands. *Perkins v. Benguet Consol. Min. Co.*, 99 N.E.2d 515, 63 Ohio Law Abs. 131 (Ohio Com.Pl.1948). Benguet had been conducting business in Ohio, but the causes of action sued on did not arise in Ohio and did not relate to the corporation's activities in Ohio.[2] *Id.* In each case, Benguet moved to quash the service of process on its president in Ohio. *Id.* The common pleas court granted Benguet's motions on the grounds that (1) the defendant was a foreign corporation and therefore could not be served with summons in accordance with the provisions of the Ohio statutes referencing service on a partnership, and (2) the business conducted by the defendant in Ohio was insufficient legally to authorize service of process on the defendant in Ohio. *Perkins v. Benguet Consol. Min. Co.*, 155 Ohio St. 116, 98 N.E.2d 33, 35 (Ohio 1951).

■ These decisions were affirmed by the Ohio Court of Appeals and by the Ohio Supreme Court. *Perkins v. Benguet Consol. Min. Co.*, 88 Ohio App. 118, 95 N.E.2d 5 (Ohio Ct.App.1950); *Perkins*, 98 N.E.2d at 33. The Ohio Supreme Court held:

> The doing of business in this state by a foreign corporation ... will not make the corporation subject to service of summons in an action in personam brought in the courts of this state to enforce a cause of action not arising in this state and in no way related to the business or activities of the corporation in this state.[3]

*Perkins*, 98 N.E.2d at 34. Perkins appealed to the United States Supreme Court.

The United States Supreme Court stated that it was unclear whether the Ohio Supreme Court rested its decision on Ohio law or on the Fourteenth Amendment. *Perkins v. Benguet Consol. Min. Co.*, 342 U.S. 437, 441, 72 S.Ct. 413, 416, 96 L.Ed. 485 (1952), *reh'g denied*, 343 U.S. 917, 72 S.Ct. 645, 96 L.Ed. 1332 (1952). It then determined, on the facts at issue, that federal due process neither compelled nor prohibited Ohio from taking or declining jurisdiction over Benguet. *Id.* at 446, 72 S.Ct. at 418. The Court vacated the case and remanded it to the Ohio Supreme Court to determine whether personal jurisdiction was appropriate under Ohio law. *Id.* at 448, 72 S.Ct. at 420.

Pursuant to the Supreme Court's determination that federal due process neither

---

**2.** Benguet owned mining property in the Philippine Islands. Its operations there were halted during occupation of the islands by the Japanese. During that period, Benguet's president returned to his home in Ohio where he maintained an office. At the Ohio office, he maintained company files, carried on correspondence relating to the company and its employees, drew checks on behalf of the company, and maintained two active bank accounts carrying substantial balances of company funds. Further, several directors' meetings were held at the Ohio office. He also supervised policies dealing with the rehabilitation of the corporation's properties in the Philippines from the Ohio office. *See Perkins v. Benguet Consol. Min. Co.*, 88 Ohio App. 118, 95 N.E.2d 5, 6–9 (1950).

**3.** Under Ohio law, only the syllabus of an Ohio Supreme Court opinion states the controlling point or points of law for the case. Rule 1(B), *Supreme Court of Ohio Rules for the Reporting of Opinions* (West 2000); *see also Perkins v. Benguet Min. Co.*, 342 U.S. 437, 442 n. 3, 72 S.Ct. 413, 417 n. 3, 96 L.Ed. 485 (1952), *reh'g denied*, 343 U.S. 917, 72 S.Ct. 645, 96 L.Ed. 1332 (March 31, 1952) (recognizing the practice). Nonetheless, the opinion accompanying the syllabus provides useful guidance on interpreting the syllabus. *Zacchini v. Scripps–Howard Broad. Co.*, 433 U.S. 562, 566, 97 S.Ct. 2849, 2853, 53 L.Ed.2d 965 (1977) ("[W]e are permitted to consult [the opinion] for understanding of the syllabus."); *Hostetler v. Consol. Rail Corp.*, 123 F.3d 387, 391 (6th Cir.1997) ("Although the Ohio Supreme Court lays down the law through the syllabus, we may look to the body of the opinion for explication of that syllabus law.").

compelled nor prohibited the exercise of jurisdiction, the Ohio Supreme Court held:

> Where jurisdiction is not limited by statutes to causes of action arising within the state, an action on a transitory cause may be maintained in the courts of this state by a nonresident against a foreign corporation *doing business* here, although the cause did not arise here or relate to the corporation's business transacted here.[4]

*Perkins,* 158 Ohio St. at 145, 107 N.E.2d at 204 (emphasis added). The court next addressed whether the defendant corporation, Benguet, was "doing business" in Ohio at the time the actions were instituted. The court held:

> A foreign mining corporation is *doing business* in this state where its local activities include: continuous maintenance of an office by the president who is the general manager and also one of the principal stockholders, continuous maintenance of two active bank accounts since 1942 with substantial balances of company funds, business correspondence, stock transfers, payment of salaries, directors' meetings, the purchase of machinery and supplies for use in the company's business, and supervision of the company's policy in rehabilitating its properties.

*Id.* (emphasis added). Consequently, the court remanded the cases to the common pleas court with instructions to overrule the motions to quash the services of summons. *Id.*

In essence, the Ohio Supreme Court adopted a federal due process general jurisdiction standard as a hook for prong one of the personal jurisdiction inquiry. That is, when an out-of-state defendant conducts "continuous and systematic" business in Ohio, it is "doing business" in Ohio and is amenable to process there, even if the cause of action did not arise from activity in Ohio.

■ In 1965, the Ohio legislature enacted the Ohio long-arm statute. 1965 Ohio Laws 2307.382. This statute recognizes that certain causes of action will make a defendant amenable to process in Ohio. This statute, however, fails to supplant the viability of *Perkins*. The Ohio long-arm statute does not limit personal jurisdiction in Ohio to causes of action arising from conduct it covers. Indeed, the statute provides: "When jurisdiction over a person is based solely upon this section, only a cause of action arising from acts enumerated in this section may be asserted against him." Ohio Rev.Code Ann. § 2307.382(C) (West 2000). As the term "solely" indicates, Ohio courts can maintain personal jurisdiction over an out-of-state defendant conducting activity not enumerated in the Ohio long-arm statute. Further, in 1976, the Ohio Supreme Court applied the *Perkins* doctrine without mention of the Ohio long-arm statute in *Wainscott v. St. Louis–San Francisco Railway Co.,* 47 Ohio St.2d 133, 351 N.E.2d 466 (1976).

*Wainscott* involved an action brought by an Ohio resident against a Missouri-based railroad corporation ("Railroad"). While the Railroad maintained offices in Cleveland and Cincinnati, it owned no real property in Ohio, maintained no bank accounts in Ohio, and its agents performed no business-related functions in Ohio other than the solicitation of orders for freight traffic over its out-of-state lines. *Wainscott,* 351 N.E.2d at 474. The cause of action was unrelated to the Ohio contacts.

In the syllabus, the *Wainscott* court stated: "The due process clause of the

---

4. In the text of the opinion, Ohio Supreme Court Chief Justice Weygandt stated that the Ohio Supreme Court's original holding was based solely on the ground that federal due process prohibited personal jurisdiction on the facts of the case at issue. *Perkins,* 107 N.E.2d at 204–05.

Fourteenth Amendment to the United States Constitution requires a determination that a foreign corporation has certain minimum contacts with Ohio such that it is fair that a defendant defend a suit brought in Ohio and that substantial justice is done." *Id.* at 467. To reach its holding, the court necessarily applied the *Perkins* rule. Indeed, the text of *Wainscott* explicitly refers to the syllabus of *Perkins,* stating, "an action on a transitory cause may be maintained in the courts of this state by a nonresident against a foreign corporation doing business here, although the cause did not arise here or relate to the corporation's business transacted here." *Id.* at 469 (quoting *Perkins,* 107 N.E.2d at 204).

The *Wainscott* court held that the "mere solicitation" doctrine applied for general jurisdiction purposes and was limited by the necessary minimum contacts of due process. This rationale was discussed in its opinion by first summarizing the Supreme Court's "mere solicitation of business" standard set out in *Green v. Chicago, Burlington & Quincy Railway Co.,* 205 U.S. 530, 27 S.Ct. 595, 51 L.Ed. 916 (1907), a case which itself concerned a cause of action unrelated to activities within the state:

> The United States Supreme Court applied this [mere solicitation of business] doctrine to a foreign railway corporation, holding that the company was not doing business nor present within the state so as to make it amenable to the jurisdiction ... of the courts.... [A]lthough the business of soliciting passengers and freight outside the area covered by the railway company's lines was probably essential, it was incidental and collateral to the main purpose of the company.... The railway company's agents sold no tickets and received no payments for transportation of freight.

*Wainscott,* 351 N.E.2d at 471–72.

In the text of his opinion, Justice Corrigan of the Ohio Supreme Court discussed the personal jurisdiction precepts set forth in *International Shoe,* requiring a court to look at the circumstances of each case to determine whether there exist certain "minimum contacts" with the forum state so that maintenance of the suit does not offend "traditional notions of fair play and substantial justice." *Int'l Shoe,* 326 U.S. at 316, 66 S.Ct. at 158 (quoting *Milliken v. Meyer,* 311 U.S. 457, 463, 61 S.Ct. 339, 343, 85 L.Ed. 278 (1940)). Because the *International Shoe* Court did not overrule *Green,* Justice Corrigan noted, "the facts in *Green* failed to establish sufficient minimum contacts so as to make it fair for the defendant to defend a suit in the forum state and to satisfy the requirement that substantial justice be done." *Wainscott,* 351 N.E.2d at 473. In the text of his opinion, Justice Corrigan then applied the guidelines set out in *International Shoe* to the facts at issue and concluded, as in *Green,* that the Railroad was "merely soliciting business" in Ohio rather than "doing business" in Ohio and consequently stated that personal jurisdiction in Ohio was not proper because the cause of action was unrelated to the Ohio contacts. *Id.* at 474.

■ In sum, the *Wainscott* court conflated the "doing business" language of *Perkins* with federal due process jurisprudence for unrelated causes of action. This mode of analysis is similar to the Ohio Supreme Court's analysis in *Perkins,* which equated "doing business" with "continuous and systematic contacts." *See Perkins,* 107 N.E.2d at 206. Therefore, a defendant conducting activity that meets the federal due process threshold for general jurisdiction is necessarily amenable to process under Ohio's "doing business" standard as described in *Perkins.*

The second prong of a personal jurisdiction analysis necessitates an inquiry into whether a defendant maintains sufficient "minimum contacts" with the forum state. The Supreme Court has stated: "[D]ue

process requires only that in order to subject a defendant to a judgment in personam ... he have certain minimum contacts with it such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe*, 326 U.S. at 316, 66 S.Ct. at 158 (quoting *Milliken*, 311 U.S. at 463, 61 S.Ct. at 343). In short, the Due Process Clause requires a court to determine whether a defendant "should reasonably anticipate being haled into court there."[5] *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980). Under the "minimum contacts" test, a defendant may be subject to either specific jurisdiction or general jurisdiction. Specific jurisdiction "arises out of" or "relates to" the cause of action even if those contacts are "isolated and sporadic." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472–73, 105 S.Ct. 2174, 2182, 85 L.Ed.2d 528 (1985). General jurisdiction arises when a defendant maintains "continuous and systematic" contacts with the forum state even when the cause of action has no relation to those contacts. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414–16, 104 S.Ct. 1868, 1872–73, 80 L.Ed.2d 404 (1984).

■ Neither the United States Supreme Court nor this court has outlined a specific test to follow when analyzing whether a defendant's activities within a state are "continuous and systematic." Instead, a court must look at the facts of each case to make such a determination.

■ The district court in the case at issue noted that Hubbell did not mount a

significant challenge to the court's exercise of jurisdiction pursuant to the Due Process Clause. The court further recognized that LSI "has ably demonstrated that the [c]ourt may properly exercise general jurisdiction over [Hubbell], inasmuch as [Hubbell] has had a significant amount of contacts with Ohio." *LSI*, 64 F.Supp.2d at 707. We agree. Based on Hubbell's millions of dollars of sales of lighting products in Ohio over the past several years and its broad distributorship network in Ohio, we find that Hubbell maintains "continuous and systematic" contacts with Ohio. Therefore, Hubbell is subject to general jurisdiction in Ohio under the Due Process Clause.

Because Hubbell is subject to general jurisdiction in Ohio under the Due Process Clause, it is necessarily amenable to process in Ohio under *Perkins* for the aforementioned reasons. Therefore, because Hubbell's activities in Ohio meet both prongs of the two-pronged personal jurisdiction inquiry, the United States District Court for the Southern District of Ohio maintains personal jurisdiction over Hubbell.

### CONCLUSION

For the reasons set forth in this opinion, we reverse the district court's dismissal of LSI's complaint pursuant to Federal Rule of Civil Procedure 12(b)(2).

*REVERSED and REMANDED.*

### COSTS

Each party shall bear its own costs.

---

5. Because Federal Circuit jurisdiction in this case exists by virtue of a federal question, "[t]he Due Process Clause that is at issue here is the Due Process Clause of the Fifth Amendment." *Beverly Hills Fan*, 21 F.3d at 1560 n. 1, 30 USPQ2d at 1003 n. 1. "The Supreme Court's constitutional jurisprudence of personal jurisdiction ... includes only state and diversity cases, and thus explicates the de-

mands of the Fourteenth Amendment's Due Process Clause, rather than that of the Fifth's." *Akro v. Luker*, 45 F.3d 1541, 1544–45, 33 USPQ2d 1505, 1508 (Fed.Cir.1995). The Federal Circuit has "nonetheless applied the 'minimum contacts' standard ... to questions of personal jurisdiction in federal cases, such as those arising under the patent laws." *Id.*