"AUTOMATIC" SPRINKLER CORPORATION OF AMERICA *vs.* SENECA FOODS CORPORATION.

Worcester.   November 2, 1971. — March 16, 1972.

Present: TAURO, C.J., REARDON, QUIRICO, BRAUCHER, & HENNESSEY, JJ.

*Jurisdiction,* Nonresident, Under long-arm statute.

The contacts with Massachusetts of the defendant in an action brought here, consisting merely of signing of a purchase order by the defendant's agent and mailing it from New York to the plaintiff's division in Worcester, Massachusetts, receipt by the defendant of the plaintiff's invoice mailed from the Worcester division, receipt by the defendant of a letter from the Worcester division acknowledging and accepting the defendant's purchase order, and a partial payment by the defendant sent by mail to the Worcester division in response to invoices, were not sufficient to confer on the Massachusetts court personal jurisdiction over the defendant under § 3 of G. L. c. 223A, the long-arm statute. [443–446]

CONTRACT. Writ in the Superior Court dated October 10, 1969.

A plea in abatement was sustained by *Meagher,* J., and the plaintiff excepted.

*Richard A. Robinson* for the plaintiff.
*Sumner B. Tilton, Jr.,* for the defendant.

REARDON, J. In this action of contract the plaintiff seeks recovery for an unpaid balance allegedly due for a palletizing machine purchased by the defendant from it. The declaration contained two counts, the first of which

was an account annexed claiming $9,187.50, plus interest and costs, for goods sold and delivered. The second count was a count in contract alleging that the defendant ordered a palletizer, that the plaintiff accepted the order and delivered the machine to the defendant, and that the defendant made a partial payment of $3,062.50 but has not remitted an unpaid balance of $9,187.50.

The action commenced on a writ, the return of service of which indicates service by certified mail with return receipt requested under G. L. c. 223A, by mailing to Dundee, New York, to one V. B. McChesney, an agent in charge of the defendant's business, who signed the return receipt.

The defendant appeared specially and filed a plea in abatement contesting the jurisdiction of the Massachusetts courts.

A hearing was held on the matters set forth in the special appearance and plea in abatement. S. K. Wolcott, Jr., the defendant's vice-president in charge of engineering, testified that he telephoned the plaintiff's New Jersey office and was referred to one Peter Price, a salesman employed by the plaintiff in its Canadian office. Price thereafter visited Wolcott in Dundee at the defendant's place of business. Wolcott informed Price that the defendant intended to purchase a machine. The two men signed an engineering sheet dated July 21, 1964. One week later Wolcott signed a purchase order and mailed it to the plaintiff's division in Worcester, Massachusetts. At the time of Price's visit to Wolcott he told him that the machine would be built in Cuyahoga Falls, Ohio, by Atkron, Inc., a division of the plaintiff. Wolcott communicated in various ways with Atkron, Inc., as construction of the machine progressed and was told that it would be delivered from Cuyahoga Falls, Ohio, to Dundee, New York. It arrived on September 24, 1964.

On September 10, 1964, the defendant received the plaintiff's invoice mailed from its Worcester division, and on September 25, 1964, received a letter from the same division to the defendant in Dundee acknowledging for-

mally the defendant's purchase order. Sometime later a partial payment of $1,225 was mailed from Dundee to the plaintiff's Worcester division.

Wolcott testified further that the defendant does no business in Massachusetts and, except for the communications described, had no contact in Massachusetts. On cross-examination he said that the defendant paid by mail to the plaintiff's Worcester division a sum of $3,000 in response to invoices.

One Jerome Valk, plant controller at the plaintiff's plant in West Boylston, Massachusetts, testified that the plaintiff's Worcester division purchased the machine from Atkron, Inc., before delivery of the machine to the defendant.

Upon consideration of the foregoing, the judge sustained the defendant's plea in abatement. The plaintiff excepted.

The question is whether the defendant's contacts in Massachusetts were sufficient to fall within the scope of G. L. c. 223A, § 3 (the long arm statute), as amended by St. 1969, c. 623, which provides that "[a] court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from the person's (a) transacting any business in this commonwealth . . . ."

We see the function of the long arm statute as an assertion of jurisdiction over the person to the limits allowed by the Constitution of the United States. See Zabin: The Long Arm Statute: International Shoe Comes to Massachusetts, 54 Mass. L. Q. 101, 108; *de Leo* v. *Childs*, 304 F. Supp. 593, 595 (D. Mass. 1969) ; *Mark* v. *Obear & Sons, Inc.* 313 F. Supp. 373, 376 (D. Mass. 1970). In this case, however, the facts do not enable the courts of Massachusetts to exercise such jurisdiction.

The expansion of jurisdiction over the person beyond traditional bounds of territorial sovereignty (*Pennoyer* v. *Neff*, 95 U. S. 714) first took place in *International Shoe Co.* v. *Washington*, 326 U. S. 310, where the court said, at page 316, that "due process requires only that in

order to subject a defendant to a judgment *in personam*, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' "

Subsequent treatment by the United States Supreme Court of the concept first expressed in the *International Shoe* case took place in *McGee* v. *International Life Ins. Co.* 355 U. S. 220, 222, and in the later case of *Hanson* v. *Denckla,* 357 U. S. 235. In the *McGee* case the United States Supreme Court allowed California to utilize its long arm statute to assert personal jurisdiction over a foreign insurance corporation that had no California contact save that the insurance contract was delivered there and that the insured resided and mailed premiums from there. In the *Hanson* case, however, jurisdiction over a Delaware trust company serving as trustee of a trust was denied on the ground of lack of the minimal contacts prerequisite to the exercise of jurisdiction over a defendant. The *McGee* case was distinguished. It appeared that the agreement in the *Hanson* case lacked any Florida (the other State involved) connection. The court in the *Hanson* case stated as follows: "[I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." P. 253.

In the present case the defendant's contacts in Massachusetts simply consisted of the signing of the purchase order and the mailing of it by the defendant's agent from Dundee, New York, to Worcester, Massachusetts, the receipt by the defendant of the plaintiff's invoice mailed from the Worcester division, the receipt by the defendant of a letter from the plaintiff's Worcester division acknowledging and accepting the defendant's purchase order, and the defendant's payment by mail to the plaintiff's Worcester division of a sum in excess of $3,000 in response to invoices and in part payment of the purchase price. These were the only contacts the defendant had with

Massachusetts. They were in the nature of affirming a contract and making payments through the mail.

*Morgan* v. *Heckle*, 171 F. Supp. 482 (E. D. Ill. 1959), deals with the Illinois long arm statute which is comparable to the Massachusetts statute. The court held in that case that the defendant's contacts with Illinois— receipt of a telephone call from the plaintiff's agent in Illinois and shipment of the contracted for goods C.O.D. to Anna, Illinois—were insufficient to warrant personal jurisdiction. In *Agrashell, Inc.* v. *Bernard Sirotta Co.* 344 F. 2d 583 (2d Cir. 1965), cited to us by the defendant, the defendant New York corporation impleaded Hammons Products Company, a Missouri corporation, as a third party defendant, alleging that it had warranted the fitness of goods for resale and had agreed to indemnify Bernard Sirotta Co. against a patent infringement suit. (The New York long arm statute allows the service of a nondomiciliary if he "transacts any business within the state.") The court assumed that the statute is "as broad as the Federal Constitution would permit it to be." *Agrashell, Inc.* v. *Bernard Sirotta Co., supra*, 586, 587. The Missouri corporation solicited orders from Sirotta by mail and telephone to New York. The contracts between the two companies were executed by Sirotta in New York, and the parties agreed that the New York law would govern the interpretation of their principal contract. On these facts the court refused to find the minimal contacts necessary to confer jurisdiction under the New York long arm statute.

The contacts in the present case, like those in the *Morgan* case and the *Agrashell* case, were insufficient to confer personal jurisdiction over this defendant. They do not approach in significance the contacts present in the cases cited by the plaintiff. Thus, in *Ziegler* v. *Hodges*, 80 Ill. App. 2d 210, the defendant sought out the plaintiff in the forum State, Illinois, to induce him to enter into a contract. The offer was accepted in Illinois, the defendant maintained continual contact with the plaintiff by mail and telephone, the plaintiff was at all

times in Illinois, and the contract was performed in Illinois. And in *Resin Research Labs. Inc.* v. *Gemini Roller Corp.* 105 N. J. Super. 401, the defendant communicated with the plaintiff by mail and the contract was substantially performed in the forum State. We have reviewed other cases cited by the plaintiff such as *Southern Mach. Co. Inc.* v. *Mohasco Indus. Inc.* 401 F. 2d 374 (6th Cir. 1968), *Simpson Timber Co.* v. *Great Salt Lake Minerals & Chems. Corp.* 296 F. Supp. 243 (D. Ore. 1969), and *Parke-Bernet Galleries, Inc.* v. *Franklyn,* 26 N. Y. 2d 13. In all of these we find action or contacts in the forum State which distinguish materially the facts in each of the cited cases from those which confront us.

This case is also to be distinguished from *Wolfman* v. *Modern Life Ins. Co.* 352 Mass. 356, where we emphasized that only the barest of contacts with the State are required for jurisdiction over insurers, the insurance field lending itself to the furthest extension of jurisdiction based on an isolated contact. We see a distinction in such cases because of the nature of interstate insurance business where such insurers commonly choose to do business across State lines. See, for example, G. L. c. 175B, § 2 (a), and Developments in the Law, State-Court Jurisdiction, 73 Harv. L. Rev. 909, 928.

We conclude that there were insufficient contacts here to make the defendant subject to our long arm statute. The impact upon commerce in Massachusetts was slight and, unlike the defendant in the *McGee* case, the present defendant did not "purposefully . . . [avail] itself of the privilege of conducting activities within the forum State." *Hanson* v. *Denckla, supra,* 253.

*Exceptions overruled.*