**MASSACHUSETTS INSTITUTE OF TECHNOLOGY, Plaintiff,**

v.

**MICRON TECHNOLOGY, INC., Defendant.**

Civil Action No. 06–11797–DPW.

United States District Court, D. Massachusetts.

Aug. 23, 2007.

---

Gregory S. Arovas, John M. Desmarais, Timothy K. Gilman, Jennifer J. Schmidt, Michael P. Stadnick, Raymond C. Woodring, Kirkland & Ellis LLP, New York, NY, Edward S. Cheng, Courtney Amber Clark, Robert J. Muldoon, Jr., Sherin and Lodgen LLP, Boston, MA, for Defendant.

Jacob K. Baron, Steven M. Bauer, Kimberly Ann Mottley, John W. Pint, Proskauer Rose, LLP, Boston, MA, for Plaintiff.

## ORDER

DOUGLAS P. WOODLOCK, District Judge.

Adopting Report and Recommendations thereby denying Motion to Dismiss for Lack of Jurisdiction.

### REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION TO DISMISS OR TO TRANSFER

DEIN, United States Magistrate Judge.

### I. INTRODUCTION

This is a patent infringement action in which the plaintiff, Massachusetts Institute of Technology ("MIT"), claims that the defendant, Micron Technology, Inc. ("Micron"), is willfully infringing, contributing to the infringement of, and/or inducing the infringement of one or more claims of U.S. Patent No. 4,890,309 (the "'309

Patent"). Presently before the court is Micron's motion to dismiss for lack of personal jurisdiction and improper venue pursuant to Fed.R.Civ.P. 12(b)(2) and 12(b)(3) or, alternatively, to transfer the case to the United States District Court for the District of Idaho pursuant to 28 U.S.C. § 1404(a) or 1406(a) (Docket No. 13). For the reasons detailed herein, this court finds that Micron's activities within the Commonwealth of Massachusetts are sufficiently continuous and systematic that this court's assertion of general jurisdiction over Micron will not offend due process.[1] This court further finds that venue in this court is appropriate and that Micron has not demonstrated that the action nevertheless should be transferred to Idaho. Therefore, this court recommends to the District Judge to whom this case is assigned that Micron's motion be DENIED.

## II. STATEMENT OF FACTS

### Standard of Review of Record

"On a motion to dismiss for want of *in personam* jurisdiction, Fed.R.Civ.P. 12(b)(2), the plaintiff ultimately bears the burden of persuading the court that jurisdiction exists." *Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n*, 142 F.3d 26, 34 (1st Cir.1998), and cases cited. However, where, as here, "the district court's

disposition as to the personal jurisdiction question is based on affidavits and other written materials in the absence of an evidentiary hearing, a plaintiff need only to make a *prima facie* showing that defendants are subject to personal jurisdiction." *Electronics for Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1349 (Fed.Cir.2003).[2] The court, in evaluating whether the plaintiff has met this burden, "must accept the uncontroverted allegations in the plaintiff's complaint as true and resolve any factual conflicts in the affidavits in the plaintiff's favor." *Id.* Applying this standard to the instant case, the relevant facts are as follows.[3]

### The Parties

Plaintiff MIT is an educational and research institution that is organized under the laws of the Commonwealth of Massachusetts and has its principle place of administration in Cambridge, Massachusetts. (Compl. (Docket No. 1) ¶ 1). It employs over 13,000 employees, including faculty members and research, library and administrative staff, at its facilities in Cambridge and Lexington, Massachusetts, and it enrolls over 10,000 students at its Cambridge, Massachusetts campus. (Pl.'s Ex. B at 1–3). MIT also maintains a technology licensing office, which grants licenses for patented and copyrighted inventions

---

1. The plaintiff contends that this court may assert general jurisdiction over Micron; there is no claim of specific jurisdiction.

2. As the parties agree, the law of the Federal Circuit governs the determination of personal jurisdiction in a patent infringement case. *See Red Wing Shoe Co., Inc. v. Hockerson–Halberstadt, Inc.*, 148 F.3d 1355, 1358 (Fed. Cir.1998).

3. The facts are derived from: (1) Exhibits attached to the "Declaration of Jacob K. Baron in Support of MIT's Memorandum of Law in Support of its Opposition to Micron's Motion to Dismiss for Lack of Personal Jurisdic-

tion and Improper Venue or, in the Alternative, to Transfer" (Docket No. 22) ("Pl.'s Ex. ——"); (2) Exhibits attached to the "Declaration of. Michael P. Stadnick in Support of Micron's Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue or, in the Alternative, to Transfer" ("Def.'s Ex. ——"), which is attached as Exhibit A to Micron's Reply Memorandum (Docket No. 25); and (3) the "Declaration of W. David Westergard in Support of Micron's Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue or, in the Alternative, to Transfer" (Docket No. 13) ("Westergard Decl.").

that arise from research performed at its facilities in Massachusetts. (*See id.* at 4).

MIT is the assignee of the '309 Patent that is at issue in this case. (Def.'s Mem. (Docket No. 14), Ex. A at 1). The '309 Patent describes a lithography mask that "includes an attenuator which passes a fraction of the incident electromagnetic radiation and phase shifts the radiation relative to the radiation passing through open features of the mask by approximately an odd multiple of Π radians." (*Id.*). In this litigation, MIT contends that Micron makes, uses, offers to sell or sells products that are manufactured through the use of the technology covered by the '309 Patent. Two of the three named inventors, Henry I. Smith and Mark L. Schattenburg, are employed at MIT in Cambridge, Massachusetts. (*Id.;* Pl.'s Ex. B at 5–7).

Defendant Micron is a Delaware corporation that has its principal place of business in Boise, Idaho. (Westergard Decl. ¶ 2). It manufactures and sells semiconductor chips and related products, and is one of the world's leading providers of advanced semiconductor solutions. (*Id.* ¶ 2; Pl.'s Ex. C at 1). According to Micron, its DRAM and Flash components are used in today's most advanced computing, networking and communications products, including computers, workstations, servers, cell phones, wireless devices, digital cameras and gaming systems. (Pl.'s Ex. C at 1). Additionally, Micron provides CMOS image sensor solutions to the handset camera, digital still camera and PC video camera markets. (*Id.*).

Micron manufactures semiconductor chips at facilities in Idaho, Utah and Virginia, as well as overseas. (Westergard Decl. ¶ 3). Moreover, Micron is the majority partner in a joint venture that manufactures lithography masks, which are the subject of MIT's infringement claims against Micron. (*Id.* ¶ 4). The joint venture's manufacturing facility is located in Boise, Idaho. (*Id.*). Micron has not sold or offered to sell any of the allegedly infringing masks in Massachusetts, and it has not imported any lithography masks into the United States via Massachusetts. (*Id.*).

Micron maintains no office or place of business in Massachusetts and has no manufacturing facilities here. (*Id.* ¶¶ 3, 7). Micron also has no bank accounts, real property or other assets in the Commonwealth. (*Id.* ¶ 7). Furthermore, although Micron advertises in some national and international publications, none of its advertising is specifically directed at Massachusetts residents. (*Id.* ¶ 6). Nevertheless, as detailed below, Micron has sufficiently continuous and systematic contacts with Massachusetts so as to allow this court to exercise general jurisdiction over the company.

### Micron's Direct Sales Activity in Massachusetts

Micron markets its semiconductor products primarily through its own direct sales force, including through its wholly-owned subsidiary, Micron Semiconductor Products, Inc. ("Micron SP"), which also does business as Crucial Technology ("Crucial"). (Pl.'s Ex. D at 6 & Ex. 21.1). Micron SP has been registered to conduct business in Massachusetts since May 1998, and it has an agent for service of process in Massachusetts. (Pl.'s Ex. I). As Crucial, it also maintains an interactive website, located at http://www.crucial.com, which sells Micron products to end-users anywhere in the world, including in Massachusetts. (Pl.'s Ex. F at 29). Thus, Crucial acts as the "retail arm of Micron" and is used "to sell products in mainly ones or twos to home users." (*Id.*).

There is no dispute that during the past four years, Micron has averaged about $20

million in total sales to Massachusetts customers each year and has paid thousands of dollars of taxes to the Commonwealth of Massachusetts each month. (*See* Def.'s Reply Mem. (Docket No. 25) at 4; Pl.'s Mem. (Docket No. 5) at 5; Pl.'s Ex. E). Nevertheless, Micron emphasizes that this represents only about 1% of Micron's total U.S. sales, and less than .5% of Micron's worldwide business. (Westergard Decl. ¶ 5).

Although Micron has no offices in Massachusetts, Micron SP does maintain a sales office in neighboring New Hampshire. (Pl.'s Ex. H). This office is referred to on Micron's website as the "New Hampshire/Massachusetts" sales office. (*Id.*). Three employees work in the sales office. (Def.'s Ex. 1 at 21). They include Paul Introcaso, Dan Platte and Bob Henning. (*Id.*).

Mr. Introcaso has worked as a Sales Representative in the New Hampshire/Massachusetts sales office since 2006. (*Id.* at 19). He is responsible for handling Micron's national accounts that have a presence in New England. (*Id.*). Mr. Introcaso's biggest accounts [REDACTED] all have facilities in Massachusetts. (*Id.* at 19–21). [REDACTED]

Mr. Introcaso is also responsible for developing two emerging accounts, [REDACTED] [which are located] throughout Massachusetts. (*Id.* at 28). Accordingly, although Mr. Introcaso maintains his office in New Hampshire, both his most significant accounts and his targeted customers maintain their primary or exclusive New England presence in Massachusetts.

Mr. Introcaso visits [REDACTED] [a customer's] facility once a week, and makes sales calls to [REDACTED] [another customer's] Massachusetts facilities once a week. (Def.'s Ex. 1 at 24; Pl.'s Ex. J at 50). He also travels to Massachusetts to make sales calls to [REDACTED] [other customers] once a month. (Pl.'s Ex. J at 30, 37–38). Mr. Introcaso estimates that he visits [REDACTED] [another customer] about once every couple of months and that he visits [REDACTED] [another customer] about once a month. (*Id.* at 30). [REDACTED] In addition to his sales calls, Mr. Introcaso regularly relies on e-mail to provide information to these entities and to promote Micron's products. (*See id.* at 38, 41, 66).

Mr. Platte has been employed by Micron since about 1990, and has served as a Regional Sales Manager for the company since 1995. (Pl.'s Ex. F at 6, 12). He is responsible for managing relationships with Micron customers in twelve different states, including Massachusetts, and serves as the global account manager for two of Micron's accounts. (Pl.'s Ex. F at 23; Def.'s Ex. 2 at 13, 19). Although Mr. Platte estimates that he spends less than 5% of his work hours in Massachusetts, he makes visits to one Massachusetts customer, [REDACTED], on a regular basis in order to meet with members of [REDACTED]'s management. (Def.'s Ex. 2 at 19; Pl.'s Ex. F at 22–23). Micron marketing personnel accompany Mr. Platte on his calls to [REDACTED] about three times a year. (Pl.'s Ex. F at 24; Def.'s Ex. 2 at 25).

Finally, Mr. Henning is a field applications engineer in the New Hampshire/Massachusetts field office. He travels to Massachusetts as needed to provide technical expertise to the company's customers. (Def.'s Ex. 1 at 23–24). Mr. Henning services Mr. Introcaso's Massachusetts accounts, as well as additional customers in Massachusetts. (Pl.'s Ex. J at 82).

### *Micron's Indirect Sales Activity in Massachusetts*

In addition to its direct sales force, Micron sells its products through indepen-

dent sales representatives. (Pl.'s Ex. D at 6). These sales representatives obtain orders subject to final acceptance by Micron and are compensated on a commission basis. (*Id.*). Micron makes shipments against these orders directly to the customer. (*Id.*).

Advanced Tech Sales, Inc. ("ATS") of North Reading, Massachusetts has acted as an independent distributor for Micron since 1985 pursuant to a contractual agreement that ATS and Micron enter into each year. (Pl.'s Ex. L & Ex. M at 7–8, 45). It represents Micron's wholly-owned subsidiary, Crucial, as well. (Def.'s Ex. 3 at 13–14). ATS sells Micron's products, in addition to the products of other manufacturers, to customers in the New England states, including Massachusetts. (Pl.'s Ex. M at 7–9, 13). It is also involved in the design of products for its clients, including Micron. (*Id.* at 26–27). ATS is listed on Micron's website as the company's manufacturer's representative in Massachusetts. (Pl.'s Ex. L). ATS's CFO, Robert Perriello, estimates that on average, ATS receives commissions on [REDACTED] [millions of dollars] in annual sales of Micron products that are sold both inside and outside of New England. (Def.'s Ex. 3 at 4, 36–37). Approximately 50 to 60% of that amount represents sales that "come[ ] out of Massachusetts." (*Id.* at 13; Pl.'s Mem. at 11). [REDACTED]

ATS employees regularly interact by telephone and e-mail with Micron's regional managers and with Micron's technical personnel in Idaho. (*See* Pl.'s Ex. F at 18 & Ex. M at 28–30). They also send paperwork to the regional manager at Micron SP in connection with ATS' design work. (Pl.'s Ex. M at 57–58). In addition, Mr. Perriello estimates that Mr. Platte visits ATS in Massachusetts up to once a month and that a Micron technical employee from Idaho visits ATS up to once a month. (*Id.* at 30, 63).

### Micron's Technical Support Activities in Massachusetts

Micron also provides technical support and engineering expertise to its customers and potential customers in Massachusetts. According to Micron, its customer support teams, consisting of field applications engineers, sales engineers and market development directors, are actively involved with customers before, during and after a sale. (Pl.'s Ex. K). In fact, Mr. Introcaso has brought a number of Micron personnel, including engineers and managers, to various meetings at his customers' and potential customers' facilities in Massachusetts in order to promote Micron's products. (*See* Def.'s Ex. 1 at 42, Pl.'s Ex. J at 43–47, 53–57, 66–67). As detailed above, Mr. Henning provides technical services to customers in Massachusetts. When further technical expertise is needed, Micron experts also are available to provide assistance. (*Id.* at 39–40). These experts may be required to travel to the customer's facility in Massachusetts. (*See id.* at 40–41, 68).

Additional factual details relevant to the court's analysis are described below.

## III. ANALYSIS

### A. Personal Jurisdiction—Generally

■ The court turns first to Micron's motion to dismiss for lack of personal jurisdiction. "A two-prong inquiry governs the determination of whether a court may properly exercise personal jurisdiction over an out-of-state defendant." *LSI Indus. Inc. v. Hubbell Lighting, Inc.*, 232 F.3d 1369, 1371 (Fed.Cir.2000). First, the district court must determine whether the defendant is amenable to process in the forum state under the state's long-arm statute. *See id.; Red Wing Shoe Co., Inc.*

*v. Hockerson–Halberstadt,* 148 F.3d 1355, 1358 (Fed.Cir.1998). Second, the district court must determine whether maintenance of the suit would violate federal due process. *See id.* The Massachusetts long-arm statute, Mass. Gen. Laws ch. 223A, § 3 (2000), authorizes jurisdiction over the person to the limits allowed by the federal Constitution.[4] *See Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.,* 290 F.3d 42, 52 (1st Cir.2002) ("[T]he Supreme Judicial Court of Massachusetts has interpreted the state's long-arm statute 'as an assertion of jurisdiction over the person to the limits allowed by the Constitution of the United States.'") (quoting *"Automatic" Sprinkler Corp. of Am. v. Seneca Foods Corp.,* 361 Mass. 441, 443, 280 N.E.2d 423, 424 (1972)). "Thus, in this case, the two-step inquiry folds into one: whether an exercise of personal jurisdiction over [Micron] would offend Due Process." *Red Wing Shoe,* 148 F.3d at 1358.

■■ Due process requires the court to determine whether the defendant has maintained "certain minimum contacts" with the forum state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Wash.,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945) (quoting *Milliken v. Meyer,* 311 U.S. 457, 463, 61 S.Ct. 339, 343, 85 L.Ed. 278 (1940)). "Jurisdiction is proper ... where the contacts proximately result from actions by the defendant *himself* that create a substantial connection with the forum State." *Asahi Metal Indus. Co. v. Super. Ct. of Cal., Solano County,* 480 U.S. 102, 109, 107 S.Ct. 1026, 1030, 94 L.Ed.2d 92 (1987) (quotations and citation omitted). "In short, the Due Process Clause requires a court to determine whether a defendant 'should reasonably anticipate being haled into court there.'" *LSI Indus.,* 232 F.3d at 1375 (quoting *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980)).

■ "Under the 'minimum contacts' test, a defendant may be subject to either specific jurisdiction or general jurisdiction. Specific jurisdiction 'arises out of' or 'relates to' the cause of action even if those contacts are 'isolated and sporadic.'" *Id.* (quoting *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472–73, 105 S.Ct. 2174, 2182, 85 L.Ed.2d 528 (1985)). "General jurisdiction arises when a defendant maintains 'continuous and systematic' contacts with the forum state even when the cause of action has no relation to those contacts." *Id.* (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414–16, 104 S.Ct. 1868, 1872–73, 80 L.Ed.2d 404 (1984)). In the instant case, MIT does not argue that this court may assert specific jurisdiction over Micron, but rather contends that this court has general jurisdiction over the defendant.

### B. *General Jurisdiction Analysis*

■ "Neither the United States Supreme Court nor [the Federal Circuit Court of Appeals] has outlined a specific test to follow when analyzing whether a defendant's activities within a state are 'continuous and systematic.' Instead, a court must look at the facts of each case to make such a determination." *Id.* Factors that the court may consider include, but are not limited to:

(1) whether the corporation solicits business in the state through a local office or agents; (2) whether the corporation sends agents into the state on a regular

---

4. The Massachusetts long-arm statute defines "person" to include corporations. Mass. Gen. Laws ch. 223A, § 1.

basis to solicit business; (3) the extent to which the corporation holds itself out as doing business in the forum state, through advertisements, listings or bank accounts; and (4) the volume of business conducted in the state by the corporation.

*3M Innovative Props. Co. v. InFocus Corp.*, No. Civ. 04–0009 JNE/JGL, 2005 WL 361494, at *2 (D.Minn. Feb. 9, 2005) (analyzing personal jurisdiction under Federal Circuit law). *See also Trierweiler v. Croxton & Trench Holding Corp.*, 90 F.3d 1523, 1533 (10th Cir.1996) (cited *with approval in Delta Sys., Inc. v. Indak Mfg. Corp.*, 4 Fed.Appx. 857, 860–61 (Fed.Cir. 2001) (unpub. op.)) (same). The defendant's contacts with the forum must be more than "random," "fortuitous," or "attenuated," or the result of the "unilateral activity" of others. *Red Wing Shoe*, 148 F.3d at 1359 (quoting *Burger King*, 471 U.S. at 475, 105 S.Ct. at 2174). A court may only exercise general jurisdiction over an out-of-state defendant where "the continuous corporate operations within [the] state [are] thought so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities." *Int'l Shoe*, 326 U.S. at 318, 66 S.Ct. at 159.

■ If the court determines that there are sufficient minimum contacts with the forum to support general jurisdiction over the defendant, the court still must determine whether the assertion of such jurisdiction is reasonable under the circumstances of the case. *See Metro. Life Ins. Co. v. Robertson–Ceco Corp.*, 84 F.3d 560, 573 (2d Cir.1996) ("[R]easonableness inquiry is applicable to *all* questions of personal jurisdiction, general or specific."). *See also Hockerson–Halberstadt, Inc. v. Propet USA, Inc.*, 62 Fed.Appx. 322, 337 (Fed. Cir.2003) (unpub. op.) (holding that reasonableness analysis applies in general juris-

diction case under Federal Circuit law). Therefore, even where the defendant conducts continuous and systematic activities in the forum, the court may decline to exercise personal jurisdiction if doing so would be unreasonable and fundamentally unfair. *See Burger King*, 471 U.S. at 476–78, 105 S.Ct. at 2184–85.

### 1. *Minimum Contacts*

■ MIT has presented evidence that, if credited, establishes that Micron has sufficient minimum contacts with Massachusetts to satisfy due process. Significantly, it is undisputed that Micron generates approximately $20 million in annual sales to Massachusetts customers and that Micron pays thousands of dollars in taxes to the Commonwealth each month. (Def.' Reply Mem. at 4; Pl.'s Ex. E). Although these sales constitute only about 1% of Micron's national sales, the evidence indicates that they represent a substantial volume of product flowing into Massachusetts on a regular basis and a significant customer base. Thus, not only are there sizeable sales to corporate clients, but there is evidence that from 2002 through 2006, Crucial generated [REDACTED] [tens of millions of dollars] from retail sales to Massachusetts customers. [REDACTED] Because Crucial typically sells one or two products at a time to home users, it is apparent that Crucial's sales activity in Massachusetts is not limited or occasional, but, rather, is continuous and systematic. (*See generally* Pl.'s Ex. G; Pl.'s Ex. F at 29).

■ The fact that these sales constitute only a small percentage of Micron's business can be considered in determining whether a court may exercise personal jurisdiction, but it is not controlling. As the court explained in *3M Innovative Props.*, in language equally applicable to the instant case:

[T]he proper inquiry is whether the defendant's contacts with the forum state are continuous and systematic. *See Helicopteros,* 466 U.S. at 415–16 [104 S.Ct. 1868]. Accordingly, the fact that the defendant's revenues from sales in the forum state amount to only a small percentage of the defendant's total sales does not render the actual dollar amount of the sales insignificant for personal jurisdiction purposes. *See Lakin v. Prudential Sec., Inc.,* 348 F.3d 704, 709 (8th Cir.2003). In fact, the Federal Circuit has indicated that where the defendant makes regular sales in the forum that result in millions of dollars of revenue, those sales are entitled to significant weight in a general jurisdiction analysis. *See, e.g., Delta Sys.,* 2001 WL 103518, at *3 [4 Fed.Appx. at 860–61]; *LSI Indus.,* 232 F.3d at 1375. Those sales alone "might be sufficient to satisfy the requirements for the exercise of general jurisdiction." *Delta Sys.,* 2001 WL 103518, at *3 [4 Fed.Appx. at 860]. *3M Innovative Props.,* 2005 WL 361494, at *3.

When Micron's annual sales activity is viewed in combination with Micron's other business contacts with the forum, the evidence illustrates that Micron has created a substantial connection with Massachusetts such that it should reasonably anticipate being haled into court there. For instance, the record shows that Micron has continuously held itself out as doing business in Massachusetts. Not only has Micron SP been registered to do business in the forum since 1998, but it also has an agent for service of process in Massachusetts. (Pl.'s Ex. I). Micron also represents to the public, by way of its website, that it maintains a sales office that services Massachusetts customers. (*See* Pl.'s Ex. H). In fact, the four largest national accounts handled through the New Hampshire/Massachusetts sales office each has

facilities in Massachusetts, and three of those accounts maintain their exclusive New England presence in Massachusetts. (*See* Def.'s Ex. 1 at 19–21). Similarly, the emerging accounts targeted by the New Hampshire/Massachusetts sales office are located in Massachusetts. (Pl.'s Ex. J at 28).

Micron actively solicits business in Massachusetts by regularly sending its agents into the state to promote Micron's products to both its existing and emerging customers. In addition to Mr. Introcaso, who routinely makes sales calls to Massachusetts at least twice a week, Micron SP's Regional Sales Manager regularly visits the state to meet with a Massachusetts-based client. (*See* Pl.'s Ex. F at 22–23). Additional customer support and marketing personnel from Micron periodically accompany the sales employees on visits to Massachusetts. (*See* Def.'s Ex. 1 at 42; Pl.'s Ex. J at 43–47, 53–57, 66–67). Furthermore, even when Micron employees are not physically present in the Commonwealth, the company continues to solicit business from its Massachusetts accounts through e-mails directed at those customers. (*See* Pl.'s Ex. J at 38, 41, 66).

Similarly, through Mr. Henning of the New Hampshire/Massachusetts sales office, as well as visits to Massachusetts customers by other Micron technical personnel, Micron provides continuing technical support to its customers in Massachusetts. (*See, e.g.,* Def.'s Ex. 1 at 23–24; Pl.'s Ex. J. at 40–41, 68, 82). These regular visits to Massachusetts customers by Micron technical and sales personnel is further evidence of a continuing presence by Micron in the forum state. *See Metro. Life Ins.,* 84 F.3d at 570 (noting that visits to forum by defendant's employees on more than 150 occasions over the course of six years is a relevant factor that supports

finding of general jurisdiction); *3M Innovative Props.*, 2005 WL 361494, at \*4 (one visit to forum every other week by defendant's representative supports finding of general jurisdiction).

Finally, the evidence shows that each year since 1985, Micron has entered into a contractual relationship with ATS, an independent distributor located in Massachusetts. (Pl.'s Ex. L & Ex. M at 7–8, 45). ATS both designs products for Micron and sells Micron's products to consumers, including consumers in Massachusetts. (*See* Pl.'s Ex. M at 7–9, 13, 26–27, 55). Micron makes shipments against orders obtained by ATS directly to the customers (*see* Pl.'s Ex. D at 6), and Micron employees are in regular contact with ATS in Massachusetts. (Pl.'s Ex. F at 18; Ex. M at 28–30, 63). Admittedly, the sales by ATS, an independent contractor, may not count as a "contact" of Micron's for jurisdictional purposes. *See Cambridge Literary Prop., Ltd. v. W. Goebel Porzellanfabrik G.m.b.H. & Co.*, 295 F.3d 59, 64 n. 3 (1st Cir.2002) (citing *Boit v. Gar–Tec Prods., Inc.*, 967 F.2d 671, 682–83 (1st Cir.1992); *United Elec., Radio and Mach. Workers,* 960 F.2d 1080, 1091 (1st Cir.1992)). Nevertheless, Micron's relationship with ATS is relevant as it "contributes to [Micron's] presence in [Massachusetts] by producing and supporting a customer base in the State" and creates "channels for providing regular advice in [Massachusetts]." *3M Innovative Props.*, 2005 WL 361494, at \*4 (contractual relationship with third party service centers located in forum helped produce and support customer base in forum and supported finding of general jurisdiction). Thus, this sales and service relationship between ATS and Micron further supports a finding of general jurisdiction. *See LSI Indus.*, 232 F.3d at 1375 (noting that defendant's distributorship network in forum, combined with millions of dollars in sales of product, sufficient to subject it to general jurisdiction); *Metro. Life Ins.*, 84 F.3d at 573 (considering as contact supporting general jurisdiction defendant's relationship with dealers in the forum that sold its product and visits to those dealers).

In sum, Micron's sales and service efforts in Massachusetts, along with the fact that it is registered to do business in the Commonwealth, has an authorized agent here, pays Massachusetts taxes, and solicits and services customers in this state, among other things, is sufficient to satisfy the minimum contacts requirement of the due process test. *See, e.g., Hologic v. Lunar Corp.*, Civ. Action No. 95–10008–REK, 1995 WL 661238, at \*4 (D.Mass. Aug. 4, 1995) (finding in patent infringement case that defendant's activity in forum was continuous and systematic where defendant generated $741,641 from sales of 15 products in forum over course of four years, periodically sent employees into forum to solicit business and provide assistance to customers, sold service and repair contracts to customers in forum, and made sustained effort, through its exclusive representative, to promote its product in the forum).

### 2. *Reasonableness*

The second step in the due process inquiry requires a determination as to whether the exercise of general jurisdiction is reasonable. In making this assessment, the court is to consider (1) the burden on the defendant; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the common interests of the states in furthering substantive social policies. *See Asahi*, 480 U.S. at 113, 107 S.Ct. at 1033; *Hockerson–Halberstadt*, 62 Fed.Appx. at 338. A finding of unreasonableness is gen-

erally "limited to the rare situation in which the plaintiff's interest and the state's interest in adjudicating the dispute in the forum are so attenuated that they are clearly outweighed by the burden of subjecting the defendant to litigation within the forum." *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1568 (Fed.Cir.1994). Thus, there is a heavy burden on the defendant to "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King*, 471 U.S. at 477, 105 S.Ct. at 2184–85. This case does not present one of those rare instances in which the reasonableness factors warrant dismissal of the action notwithstanding the defendant's continuous and systematic contacts with the forum state.

■ As an initial matter, the burden imposed on Micron by requiring it to appear in the forum is not particularly great. As the record demonstrates, Micron employees regularly travel between states, and Micron SP maintains a sales office in neighboring New Hampshire. Although it may be, as Micron argues, that most of Micron's witnesses, as well as its documents and physical evidence are located in Idaho, "progress in communications and transportation has made the defense of a suit in a foreign tribunal less burdensome" than in the past. *World–Wide Volkswagen*, 444 U.S. at 294, 100 S.Ct. at 565. Moreover, Micron has not established that it would be particularly burdensome for it to have to defend itself in Massachusetts. *See Breckenridge Pharm., Inc. v. Metabolite Labs., Inc.*, 444 F.3d 1356, 1367 (Fed. Cir.2006) ("general assertion of hardship, without supporting evidence, [is] unpersuasive"). Accordingly, this court concludes that for a company like Micron, which is a worldwide leader in its area of business and has operations in various states as well

as overseas, the added cost and inconvenience of litigating this matter in Massachusetts is not significant enough to defeat jurisdiction.

The second reasonableness factor, which addresses the forum state's interest in adjudicating the dispute, cuts in favor of Massachusetts. "There is no doubt that Massachusetts has an interest in protecting the intellectual property of its citizens." *Foster–Miller, Inc. v. Babcock & Wilcox Can.*, 975 F.Supp. 30, 38 (D.Mass. 1997). *See also Breckenridge Pharm.*, 444 F.3d at 1367 (states have an interest in protecting their companies and residents). Accordingly, this factor favors keeping the action here.

The third consideration favors a forum that can provide convenient and effective relief for the plaintiff. "This inquiry requires the court to focus on the convenience and effectiveness of relief from the plaintiff's perspective...." *Breckenridge Pharm.*, 444 F.3d at 1368. Certainly, it would be more convenient for MIT to litigate its claims in the forum in which it conducts its business and in which its key personnel, including two of the inventors of the '309 Patent, maintain their offices. *See id.* (it is clearly more convenient for a plaintiff having its base of operations in the forum state to obtain relief in that state). Consequently, the third reasonableness factor weighs heavily in favor of this court exercising jurisdiction.

The remaining factors—the judicial system's interest in obtaining the most effective resolution of the controversy and the interests of the affected states in promoting substantive social policies—do not appear to favor either party. Nothing in the record suggests that the case would be resolved most effectively in a particular forum. Micron argues that most of the witnesses, documents and physical evidence are located in Idaho, thereby mak-

ing Massachusetts a less efficient forum than Idaho. (*See* Def.'s Reply Mem. at 12). However, these considerations will be addressed below in connection with Micron's request to transfer to Idaho—they are not " 'so substantial as to achieve *constitutional* magnitude.' " *Breckenridge Pharm.*, 444 F.3d at 1368 (quoting *Burger King*, 471 U.S. at 484, 105 S.Ct. at 2188). This case also does not involve any unique social or policy issues of concern to either Massachusetts or Idaho. Therefore, the fourth and fifth reasonableness factors do not tip the balance in either direction.

In sum, the reasonableness factors that are relevant to this case support this court's assertion of general jurisdiction over the out-of-state defendant. Accordingly, the maintenance of this lawsuit against Micron in Massachusetts "would comport with 'fair play and substantial justice.' " *Burger King*, 471 U.S. at 476, 105 S.Ct. at 2184 (quoting *Int'l Shoe*, 326 U.S. at 320, 66 S.Ct. at 160). Since, as detailed above, Micron also has sufficient "minimum contacts" with Massachusetts to support this court's exertion of general personal jurisdiction over the defendant, this court recommends that Micron's motion to dismiss for lack of personal jurisdiction be denied.

### C. *Motion to Dismiss for Lack of Venue*

██ Micron also has moved to dismiss for improper venue pursuant to Fed.

R.Civ.P. 12(b)(3). However, it is undisputed that "[v]enue in a patent action against a corporate defendant exists wherever there is personal jurisdiction." *Trintec Indus., Inc. v. Pedre Promotional Prods., Inc.*, 395 F.3d 1275, 1280 (Fed.Cir.2005). *See also* Def.'s Mem. at 7–8. Because this court has personal jurisdiction over Micron, venue in this district is proper.[5]

### D. *Motion to Transfer Venue*

Finally, this court addresses Micron's motion to transfer venue, pursuant to 28 U.S.C. § 1404(a), to the United States District Court for the District of Idaho. "Under § 1404(a), a district court may transfer any civil action to any other district where it may have been brought '[f]or the convenience of parties and witnesses, in the interest of justice.' " *Coady v. Ashcraft & Gerel*, 223 F.3d 1, 11 (1st Cir.2000) (quoting 28 U.S.C. § 1404(a)).[6] For the reasons detailed herein, this court recommends that the motion to transfer in this case be denied.

██ "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.' " *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29, 108 S.Ct. 2239, 2244, 101 L.Ed.2d 22 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622, 84 S.Ct. 805, 812, 11 L.Ed.2d 945 (1964)). "Factors to be considered by the district court in making its

---

5. Micron has requested that as an alternative to dismissal for improper venue, this court transfer the case to the United States District Court for the District of Idaho pursuant to 28 U.S.C. § 1406(a). That statute provides that "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). Because venue properly lies in this district, this court recommends that Micron's alternative request to transfer venue under § 1406(a) be denied.

6. Micron's motion to transfer venue pursuant to 28 U.S.C. § 1404(a) is a procedural matter that is governed by the law of the First Circuit rather than the law of the Federal Circuit. *See Winner Int'l Royalty Corp. v. Wang*, 202 F.3d 1340, 1352 (Fed.Cir.2000).

determination include the convenience of the parties and witnesses ... the availability of documents, and the possibilities of consolidation." *Cianbro Corp. v. Curran–Lavoie, Inc.*, 814 F.2d 7, 11 (1st Cir.1987). Furthermore, the burden of demonstrating that transfer is appropriate "rests with the party seeking transfer; there is a strong presumption in favor of the plaintiff's choice of forum." *Coady*, 223 F.3d at 11.

■■ Micron argues that the alleged infringing activity has occurred in Idaho and that therefore the key witnesses and evidence will be located there. (Def.'s Reply Mem. at 14–15; Def.'s Ex. 8 ¶ 2). It also argues that Idaho would be a more convenient forum for Micron's witnesses, that there are third-party witnesses located in Idaho, and that MIT and its witnesses would suffer relatively little inconvenience from having to litigate the dispute in Idaho. (Def.'s Reply Mem. at 16–19). MIT counters that its licensing personnel as well as its decision makers are located in Massachusetts, as are two of the inventors. Therefore, they would be inconvenienced by having to pursue the litigation in Idaho. (Pl.'s Mem. at 18).

■■ This court finds that Micron's arguments in favor of transfer are not compelling enough to overcome the presumption in favor of MIT's choice of forum under the circumstances of this case. As an initial matter, although it would be more convenient for Micron to litigate the dispute in Idaho, it would be more convenient for MIT to litigate here. It is not appropriate to transfer venue "where [the] effect merely shifts the inconvenience from one party to another." *Holmes Group, Inc. v. Hamilton Beach/Proctor Silex, Inc.*, 249 F.Supp.2d 12, 18 (D.Mass.2002). Moreover, MIT has brought suit in its home state. "Where a plaintiff chooses his home forum, such a choice usually represents considerations of convenience rather

than harassment of the defendant." *Id.* at 17.

Micron nevertheless argues that it would suffer greater inconvenience than MIT from having to litigate this case outside its home forum because MIT has a facility in Idaho, but Micron has no facilities in Massachusetts. (*See* Def.'s Reply Mem. at 19). However, as described above, Micron SP has a sales office in neighboring New Hampshire and its employees regularly travel to Massachusetts to meet with customers. Under these circumstances, it would not be unduly burdensome for Micron to litigate in Massachusetts.

The fact that Micron's documents and the accused device are located in Idaho provides little support for a transfer of venue. The documents will need to be produced to MIT during discovery. Because MIT is located in this forum, and its decision makers and the licensing personnel and inventors are in the Commonwealth, copies of the documents will need to be shipped or otherwise transported to Massachusetts in any event. Moreover, at oral argument, Micron represented that the accused device is easily transported. Accordingly, maintaining this litigation in Massachusetts would not substantially increase the burden on Micron.

MIT has deflated any argument that Micron may have had about inconvenience to witnesses by readily conceding that pretrial depositions and any inspection of the manufacturing process will take place in Idaho, if that is where the witnesses are located. Moreover, the witnesses that Micron has identified specifically are Micron employees and are within Micron's control. Micron has also suggested that there are some employees of its supplier who may have some knowledge of the manufacturing process. (*See* Def.'s Reply Mem. at 16). However, it does not appear that

Micron considers these unnamed witnesses to be critical, or that they would not testify voluntarily. In short, there is no evidence that subpoenas will be an issue or that Micron will have any difficulty obtaining its witnesses' testimony, either at deposition or at trial. *Contrast Teknekron Software Sys., Inc. v. Cornell Univ.*, No. 93–20122 SW, 1993 WL 215024, at \*8 (N.D.Cal. June 14, 1993) (on which Micron relies) (considering the fact that the case involved many non-party witnesses who were beyond the subpoena power of the court to be a relevant consideration).

At this juncture, it is too early to tell how many witnesses would actually be needed if this case proceeded to trial. *See Baxa Corp. v. ForHealth Techs., Inc.*, No. 3:05–CV–2274–D, 2006 WL 680503, at \*3 (N.D.Tex. March 16, 2006) ("[I]n the court's experience litigating patent cases, the primary witnesses are employees of the parties and their experts, not third party witnesses."). Both parties concede that expert testimony is likely, and the identity and location of such experts is presently unknown. Micron has not established that requiring its employees to attend trial in Massachusetts would be significantly more·disruptive to its business than having these employees attend trial in Idaho. Under these circumstances, and especially considering the mobility of Micron's workforce and the fact that pretrial depositions will take place in Idaho, Micron has not established that Idaho is a substantially more convenient forum than Massachusetts.[7] Accordingly, this court recommends that Micron's motion to transfer venue be denied.

## IV. CONCLUSION

For the reasons stated herein, this court finds that the exercise of personal jurisdiction over the defendant Micron in this case is consistent with the constitutional requirements of due process. This court further finds that venue in this court is appropriate and that Micron has not demonstrated that the action nevertheless should be transferred to Idaho. Therefore, this court recommends to the District Judge to whom this case is assigned that Micron's motion to dismiss for lack of personal jurisdiction and venue and its alternative motion to transfer venue (Docket No. 13) be DENIED.[8]

May 22, 2007.

---

7. Micron cites to cases which analyze the preferred forum in patent infringement cases in terms of "the center of gravity of the accused activity." *See Baxa Corp.*, 2006 WL 680503, at \*2, and cases cited. Even such cases recognize that the plaintiff's choice of forum "is usually entitled to substantial weight and should be highly esteemed" where the plaintiff has brought suit in its home forum. *Id.* Moreover, the "center of gravity" analysis is simply another formulation for determining the most convenient locale for patent litigation. Since in the instant case the design and marketing of the product by MIT is as significant to this patent infringement litigation as Micron's use and marketing of its product, maintenance of this action in Massachusetts is appropriate.

8. The parties are hereby advised that under the provisions of Fed.R.Civ.P. 72 any party who objects to these proposed findings and recommendations must file a written objection thereto with the Clerk of this Court within 10 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with this Rule

shall preclude further appellate review. *See Keating v. Sec'y of Health & Human Servs.*, 848 F.2d 271, 275 (1st Cir.1988); *United States v. Valencia–Copete,* 792 F.2d 4, 6 (1st Cir.1986); *Park Motor Mart, Inc. v. Ford Motor Co.,* 616 F.2d 603, 604–605 (1st Cir.1980); *United States v. Vega,* 678 F.2d 376, 378–79 (1st Cir.1982); *Scott v. Schweiker,* 702 F.2d 13, 14 (1st Cir.1983); *see also Thomas v. Arn,* 474 U.S. 140, 153–54, 106 S.Ct. 466, 474, 88 L.Ed.2d 435 (1985). *Accord Phinney v. Wentworth Douglas Hosp.,* 199 F.3d 1, 3–4 (1st Cir.1999); *Henley Drilling Co. v. McGee,* 36 F.3d 143, 150–51 (1st Cir.1994); *Santiago v. Canon U.S.A., Inc.,* 138 F.3d 1, 4 (1st Cir. 1998).