Kenton-Walker, Janet, J.
INTRODUCTION
This action arises from personal injuries suffered by James Nolan (“Nolan"). Based on those injuries, Nolan brought an action (“the tort action”) against Rochester Linoleum and Carpet Center, Inc. (“Rochester”). Rochester, in turn, demanded that its insurer, Dryden Mutual Insurance Company (“Diyden”) defend and indemnify it with respect to the tort action (“the coverage action”). Before the court is Diyden’s Motion to Dismiss. For the reasons that follow, that motion will be DENIED.
BACKGROUND
The following jurisdictionalfy-relevant facts are taken from the Third-Party Complaint and other evi-dentiaiy materials before the court. Diyden is a co-operative fire insurance company with a principal place of business in New York. Dryden is licensed to issue insurance policies in New York. P&J Commercial Flooring Services, Inc. (“P&J”) is a corporation whose business involves carpet installation, with a principal place of business in New York. Rochester is a corporation whose business centers on carpet installation, with a principal place of business in New York.
In 1998, Diyden issued a general liability policy to P&J (“the policy”). The policy did not limit coverage only to New York. Rochester contends that the policy coverage encompassed “the United States of America, including its territories and possession [sic], Puerto Rico and Canada.” On July 2, 2002, P&J and Rochester entered into a carpet installation contract in connection with the Williams College Theater construction project, in Massachusetts. On June 4, 2004, under the terms of that contract, P&J added Rochester to the policy as an “additional insured.”
On February 25, 2005, Nolan commenced the tort action against Rochester, after being injured as the result of a “dangerous condition” at the Williams College Theater construction project site. Rochester demanded that Diyden defend and indemnify it in the tort action. Diyden did not do so. Consequently, Rochester instituted the coverage action against Diyden on November 30, 2009.
*129 DISCUSSION
1. Standard. A plaintiff facing a motion to dismiss under Mass.R.Civ.P. 12(b)(2) bears the burden of establishing facts sufficient to show that the Massachusetts Court has personal jurisdiction over the defendant. See Droukas v. Divers Training Academy, Inc., 375 Mass. 149, 151 (1978). In assessing the record on such a motion, the court construes the facts in the light most favorable to the plaintiff, as with a motion for summary judgment. See Tatro v. Manor Care, Inc., 416 Mass. 763, 765 (1994), citing Alioto v. Mamell, 402 Mass. 36, 37 (1988). When considering the plaintiffs evidence, however, the Court need not “credit conclusory allegations or draw farfetched inferences.” Workgroup Technology Corp. v. MGM Grand Hotel, LLC, 246 F.Sup.2d 102, 108 (D.Mass. 2003).
Personal jurisdiction over a non-resident defendant depends on a two-pronged test. First, the defendant’s conduct must fall within the limits of the Massachusetts long-arm statute, G.L.c. 223A, §3(a)-(h). Second, if jurisdiction is authorized by statute, its exercise must also comply with the basic due process requirements established by the United States Constitution. See Tatro, 416 Mass, at 767. Often this two-part test converges into a single inquiry, since G.L.c. 223A “functions as ‘an assertion of jurisdiction’ over the person to the limits allowed by the Constitution of the United States.” Good Hope Indus., v. Ryder Scott Co., 378 Mass. 1, 6 (1979), quoting Automatic Sprinkler Corp. of Am. v. Seneca Foods Corp., 361 Mass. 441, 443 (1972). If a case does not meet the requirements of the statute, the Court has no occasion to examine whether jurisdiction would comport with due process. See Morrill v. Tong, 390 Mass. 120, 133 (1983).
2. Long-arm statute. This court may exercise jurisdiction over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from that person’s “(b) contracting to supply services or things in this commonwealth . . . [or] (f) contracting to insure any person, property, or risk located within this commonwealth at the time of contracting.” G.L.c. 223A, §3(b), (f). Particularly because “only the barest of contacts with the State are required for jurisdiction over insurers, the insurance field lending itself to the furthest extension of jurisdiction based on an isolated contract,” Automatic Sprinkler Corp., 361 Mass. at 446, personal jurisdiction encompasses Dryden.
According to two persuasive decisions, a liability insurance contract constitutes a contract to supply services in Massachusetts for the purposes of G.L.c. 223A, §3(b). “[I]f it is reasonably foreseeable that the insured may be haled into a court in the commonwealth, it is also reasonably foreseeable that the insurer’s contracting to assist in the defense will require acts in the commonwealth that may reasonably be described as supplying services ... in the commonwealth.” Nat’l Union Fire Ins. Co. of Pittsburgh, PA v. Concord Group Ins. Co., Civil Action 05-2055, 2006 WL 2848146 *3 (Worcester Super.Ct. Aug. 17, 2006) [21 Mass. L. Rptr. 457] (Agnes, J.), quoting Am. Home Assur. Co. v. Sport Maska, Inc., 808 F.Sup. 67, 75 (D.Mass. 1992).
While J&P initially represented that “0%” of its business operations took place outside of New York on its application for insurance, nothing in the terms of the policy excludes business activity outside New York from coverage. Indeed, Rochester contends that the policy expressly covered risk throughout the United States. Consequently, it was reasonably foreseeable that Diyden would need to conduct business in Massachusetts pursuant to its obligations under the policy. This is particularly true in light of J&P’s election to add Rochester to the policy; two corporations are more likely to engage in business in multiple states than one corporation alone.
Alternatively, G.L.c. 223A, §3(f) applies to Diyden as a result of its contract to insure a risk located in Massachusetts at the time of contracting.
“Risk” is a forward-looking concept. Once all relevant events have occurred and, in relationship to liability insurance, we can look back and say the legal consequences of those events have been finally determined, risk has been resolved, and there is certainty one way or the other... To the extent that it is reasonably foreseeable that a defendant will be subject to personal jurisdiction in the commonwealth with respect to a tort action, the liability insurance contract will apply to a “risk” located within this commonwealth at the time of contracting.
Nat'l Union Fire Ins. Co., 2006 WL 2848146 at *4, quoting Am. Home Assur. Co., 808 F.Sup. at 75.
As noted by the court in Nat’l Union Fire. Ins. Co., “it is reasonably foreseeable that the thing being insured would travel outside the state where the insurance contract was entered into. Among the duties assumed by Concord are, in the event of a claim against its insured, to defend and indemnify that insured. Satisfaction of these duties may necessarily require [Dryden’s] participation in a Massachusetts court case.” Id. That reasoning applies with particular force where, as here, the thing being insured is risk associated with a business practice; business activity is especially capable of easily traveling between state lines, and existing in multiple states simultaneously.
Finally, “Massachusetts, the state where the loss was sustained, has a definite interest in ensuring that a party responsible for covering the loss fulfill its obligations . . . This court certainly has an interest in determining issues that impact which parties appear before it and which parties will ultimately bear the responsibility for satisfying any potential judgment obtained in a Massachusetts court by a Massachusetts citizen or corporation.” Id.
*130 3. Due process. Always underlying personal jurisdiction analyses are the constitutionally based questions of whether a defendant has, by some “affirmative, intentional act,” “purposefully avail[ed] itself of the privilege of conducting activities within the forum State thus invoking the benefits and protections of its laws,” “such that it is fair and reasonable to require the defendant to come into the State to defend the action.” Good Hope Indus., Inc., 378 Mass. at 7, quoting Hanson v. Denckla, 357 U.S. 235, 253 (1958). A defendant’s contacts with Massachusetts must have been “deliberate and not fortuitous, such that the possible need to invoke the benefits and protections of the forum’s laws was reasonably foreseeable, if not foreseen, rather than a surprise.” Id. at 10 (internal quotation omitted).
“Although [Dryden] does not consider itself a ‘national’ insurer, and may never have solicited business in Massachusetts, they sold policies that they knew, or should have known, would potentially require them to defend or arrange for the defense of policy holders being sued in Massachusetts and thus [Dryden] could have ‘reasonably anticipate[d] out-of-state litigation.’ ” Id. at 5, quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474 (1985). “If [Dryden] did not wish to insure a risk in Massachusetts they could have excluded coverage in Massachusetts.” Id.
Based on the above, this court sees no reason why expecting Dryden to litigate in Massachusetts would offend traditional notions of fair play and substantial justice. The burden on Dryden does not appear to be onerous, and it was Dryden itself that issued an insurance policy that could foresceably obligate it to litigate in the Massachusetts courts. See CSR, Ltd. v. Fed. Ins. Co., 146 F.Sup.2d 556, 560 (D.N.J. 2001) (“a liability insurance whose policy ‘territory’ covers the forum has minimum contacts with that forum, and is constitutionally subject to suit by its insured there in coverage litigation concerning forum-related incidents or claims”).
CONCLUSION AND ORDER
For the foregoing reasons, Dryden’s Motion to Dismiss is, in all respects, DENIED.